**UNITED STATES of America, Appellee,**

v.

**Larry FASSLER, Appellant.**

**No. 25191.**

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1970.

Steven H. Goldfarb (argued), Oakland, Cal., for appellant.

James M. Wilkes (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before KOELSCH, BROWNING and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant [1] was indicted, tried by a jury and found guilty of a violation of 21 U.S.C. § 176a (conspiracy to illegally import marihuana). He was sentenced to serve a term of 15 years imprisonment and appeals. We affirm.

The specific charge against the appellant is that on or about March 21, 1968, he helped package 350 pounds of bulk marihuana which he knew had been illegally imported and brought into the United States contrary to law and that he worked in concert with others in the unlawful importation of the drug. A recital of the facts would add nothing to the literature of the judiciary. The record clearly demonstrates that appellant and several others were illegally import-

1. With others.

ing marihuana into the United States. Large quantities of the drug were transported by airplane from Mexico to a landing spot in Arizona, at which point appellant would take possession and process it into saleable form. Gerald Lawrence, one of the conspirators, was granted immunity and testified against appellant.

■ Appellant's threshold contention is that the imposition of an internal revenue tax lien against his property prior to the trial, under the provisions of the Marihuana Tax Act, 26 U.S.C. §§ 4751–4755, invaded his Fifth Amendment rights. He argues that the effect of the tax lien was to deny him use of property with which he could have raised money to prepare his defense. He intimates that the imposition of the tax lien was part of a plan by the government to deny him the right to counsel of his own choosing and the right to bail. He suggests that if his property had been free of the lien, he would have had funds available with which he could have made a more thorough investigation which might have produced more favorable witnesses. However, he does not claim that he was denied the right to subpoena any witnesses, nor does he charge that he was denied the right to effective counsel. The record clearly demonstrates that his court appointed attorney represented appellant in the finest traditions of the profession. There is no showing whatsoever that the government was not acting in good faith in placing the lien on appellant's property, nor is there any showing that he did not receive a fair trial. He cites no authority in support of his position, nor has our research revealed anything which might be in his favor.

Next, appellant argues that the United States Attorney improperly developed three prior instances of appellant trafficking in marihuana.

In the course of the opening statement, the United States Attorney said the government would " * * * offer the testimony of a Gerald Lawrence, a man . . . who will describe how he first became associated with Mr. Fassler prior to the opening part of this conspiracy and thereafter how Mr. Fassler had gotten into the business of importing marihuana from * * *." Upon objection, the court instructed the jury that the opening statement of an attorney was not evidence and that no finding of any kind could be based on what an attorney might say to them in the opening statement. The United States Attorney continued, "Mr. Lawrence, in January he was driving the marihuana through the port and meeting Mr. Fassler in Tucson and they would dispose of it." Again, at the close of the opening statements, the court admonished the jury not to consider the statements of the attorneys as evidence.

Following through on the opening statement, the United States Attorney elicited from the co-conspirator Lawrence that appellant had instructed him to "buy as much marihuana as I possibly could with the amount he gave me, send it up in bulk because he had purchased a new press that he wanted to package the stuff himself so that his uniformity was better than what had previously taken place." Appellant's attorney immediately objected and later moved for a mistrial on the ground that the statement involved a prior act and was highly prejudicial. The motion was denied.

■ It is well established in this circuit that evidence of other similar acts or offenses is relevant on the question of intent and on the issue of whether there was an agreement or arrangement to smuggle marihuana. DeCarlo v. United States, 422 F.2d 237, 239 (9th Cir. 1970); United States v. Jiminez-Robles, 415 F.2d 308 (9th Cir. 1969); Craft v. United States, 403 F.2d 360 (9th Cir. 1968) and Theobald v. United States, 371 F.2d 769 (9th Cir. 1967), among others.

■ The United States Attorney's interruption of the cross-examination of Lawrence with the statement, "Your Honor, maybe I am mishearing counsel, but I think he is asking for other discussions of marihuana, or maybe he isn't.", when read in the context of the entire cross-examination was not improp-

er. Additionally, no objection was made to this statement at the time of the trial.

 Finally, appellant complains of the testimony of three witnesses which established a connection between the appellant and the boxes which were seized with the marihuana. One of these witnesses testified that appellant took delivery of these boxes. Subsequently, the court struck the testimony of all of these witnesses on the ground that the testimony might have been the product of an illegal search and seizure. The court's instruction directing the jury to disregard the testimony was complete and precise.[2] We should assume that the jury followed this instruction. Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); Fineberg v. United States, 393 F.2d 417 (9th Cir. 1968) and Cook v. United States, 354 F.2d 529 (9th Cir. 1965). Assuming, without deciding that the testimony of the three witnesses was obtained by reason of an illegal search and seizure of certain documents, nevertheless, on the record before us we hold that the vigorous language of the court's instruction directing the jury to disregard the testimony of those witnesses alleviated any error which may have been committed.

Appellant stresses Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). The case is not in point. There, the improper testimony was admitted over the timely and repeated objections of the appellant. Here, the court instructed the jury to disregard the challenged testimony.

2. "Members of the jury, I do want to take up a matter with you. You recall that on the first day of the trial on Thursday afternoon there were three witnesses appeared here from the A & J Custom Sheet Metal Company. There was a Mr. Sweeney, who was owner of the company, Mr. Glen Wortman, who was an employee, and Mr. Dale DeVee, who was another employee. Their testimony concerned sheet metal boxes like those that are part of Government's Exhibit 11, 12 and 13. They testified about boxes and they testified about invoices or copies of invoices which were marked as Government's 38 and 39. The Court has ordered those

Aside from the curing effect of the instruction, we have carefully studied the 564 page transcript and find that the evidence of appellant's guilt was so overwhelming that any violation of his constitutional rights was harmless beyond a reasonable doubt within the meaning of the doctrine taught in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.

exhibits, 38 and 39, stricken from the record in this case and the Court has also ordered the testimony of all those witnesses, of those three witnesses, stricken from the record of the case. So you are now instructed that you are to completely disregard, lay out of your mind the testimony of all those witnesses. Treat the witnesses and the testimony as if you had never heard of it. This is a very important admonition and I will ask you to abide by it just as fully and sincerely as possible. That is with respect to those three witnesses, Mr. Sweeney, Mr. Wortman and Mr. DeVee."

[Vol. 7, Transcript, pp. 422–23].