UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard S. BERRY, Defendant-Appellant.

No. 79–1698.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 12, 1980.

Decided Sept. 8, 1980.

David M. Ochoa, Phoenix, Ariz., for defendant-appellant.

Dale A. Danneman, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee; Stephen M. Dichter, Asst. U. S. Atty., Phoenix, Ariz., on brief.

Before WRIGHT, CHOY and ALARCON, Circuit Judges.

WRIGHT, Circuit Judge:

The court's opinion filed on July 7, 1980 is withdrawn and the following Amended Opinion is substituted.

Berry argues that his conviction for conspiracy to commit fraud should be reversed because (1) the Arizona District's jury selection system improperly excluded Indians and (2) the cumulative effect of several errors and instances of prosecutorial misconduct prejudiced him and foreclosed his right to a fair trial. We reject both arguments and affirm the conviction.

Berry was indicted for offenses related to perjury and the obstruction of justice by a grand jury selected from the combined Phoenix and Prescott divisions of the District of Arizona. Under the jury selection system then in operation, prospective jurors in each division living more than 100 miles from the division courthouse could exempt themselves from consideration for service. Berry attempted to show that this exemption caused an unconstitutional underrepresentation of Indians. The government challenged his statistical evidence as stale and inaccurate.

At his trial, Barnes and Herzberg testified against Berry. Each had been convicted of offenses related to a fraud scheme but, in exchange for their cooperation, the prosecutor informed the parole commission of their cooperation.[1] They testified that Berry advocated their hiding of evidence and lying to the SEC. They were virtually the government's only witnesses. Berry offered eight witnesses, each of whom testified that the two were untrustworthy.

During a recess, the jury foreman read the first few lines of a newspaper story from which he learned that Berry had been disbarred. The foreman was questioned in

---

1. Barnes served two years of a 20-year sentence and Herzberg served about two and one- half years of a 15-year sentence.

chambers where he declared that he could still be fair. The court denied the defendant's motion for a mistrial.

In closing argument, the prosecutor declared that the government had separated Barnes and Herzberg so they could not compare their stories. He argued that this made their testimony credible.

In rebuttal argument, the prosecutor responded to defense counsel's attack on Barnes' credibility by blaming Berry for his criminal conduct. He argued that if Berry had not hidden evidence Barnes would have been incarcerated sooner and could not have committed several crimes.

The jury found Berry guilty of conspiracy but not guilty of subornation of perjury or obstruction of justice. On appeal, he argues that his indictment was invalid because the grand jury was selected from a pool in which Indians were unconstitutionally underrepresented and contends that he was prejudiced by the immediate and cumulative effect of various errors and instances of prosecutorial misconduct.

*CONSTITUTIONALITY OF THE JURY POOL:*

■ Berry's timely motion to dismiss his indictment on the ground that Indians were unconstitutionally excluded by the jury selection system was denied. We review under the test established in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979):

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation

is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. at 668.

The first element is well satisfied. *United States v. Brady*, 579 F.2d 1121 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979). Berry attempts to establish the second element statistically. He offers figures purporting to show that, although 4.27% of the population in the combined Phoenix and Prescott divisions are Indians, they comprise only 1.15% of the venire. He seeks to prove the third element, that the jury selection system causes the exclusion of Indians, by linking their alleged underrepresentation to the 100-mile exemption.[2]

■ The *Duren* test combines a fourth element, however, which is fatal to Berry's argument. The Court declared:

> Finally, in order to establish a prima facie case, it was necessary for petitioner to show that the underrepresentation of women, generally *and on his venire*, was due to their systematic exclusion in the jury-selection process.

*Id.* at 366, 99 S.Ct. at 669 (emphasis added). Berry's jury was selected from jury wheels filled on January 15, 1977. His statistics purport to show that Indians were underrepresented on jury wheels filled during the following two years. He failed to introduce any evidence showing underrepresentation on his venire.

*PREJUDICIAL ERROR AND PROSECUTORIAL MISCONDUCT:*

■ Berry objects to several alleged errors and instances of prosecutorial misconduct. He argues that he was prejudiced by them separately and cumulatively. Our discussion of his argument follows the three-step analysis outlined in *United States v. Roberts*, 618 F.2d 530 (9th Cir. 1980). We address these questions:

> (1) Did any error or prosecutorial misconduct occur?

---

**2.** The government argues that Berry's statistics cannot be used because he failed to submit affidavits from those who compiled them. Berry has now moved to make the affidavits part

of the record on appeal. Even were we to grant his motion, we would affirm the trial court's ruling.

(2) Were the issues preserved for appeal?

(3) Was the defendant prejudiced?

If all are answered affirmatively, we must reverse.

We will discuss each alleged error and instance of misconduct under the three-step analysis and then address their cumulative effect.

### NEWSPAPER INCIDENT:

During the course of the trial, the jury foreman informed the court that he had inadvertently read the first few lines of a newspaper article which described Berry as a disbarred attorney. Later in the article, the cause of disbarment was revealed. Evidence of the disbarment had been ruled inadmissible. Berry argues that the district court failed to make an adequate investigation of the incident and should have declared a mistrial.

### THE TRIAL COURT'S INVESTIGATION:

With all counsel present, the judge questioned the foreman in chambers. He asked whether the juror continued to read the article after he realized it concerned Berry and whether he read anything which might influence him. He responded negatively to both questions. The judge asked the other jurors in open court whether they had read the article. They indicated they had not. Berry insists the judge should have asked the foreman precisely what he remembered from the article and should have questioned each of the other jurors individually in chambers.

■ The decision to conduct a hearing into alleged jury misconduct and to determine its extent and nature is discretionary. *United States v. Hendrix,* 549 F.2d 1225, 1227–28 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). We find no abuse of discretion.

The judge's response was commendable. He questioned the jurors enough to satisfy himself that no significant bias had been caused but refused to conduct such an inquisition that the jurors might conclude that Berry had been involved in other criminal activity.

### DENIAL OF MISTRIAL MOTION:

Berry argues that the judge erred in refusing to grant a mistrial. A mistrial was required if "the misconduct [prejudiced] the defendant to the extent he [did] not receive a fair trial," *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974); *United States v. Hendrix, supra,* 549 F.2d at 1229.

■ The conscientious foreman volunteered that he had read the opening lines of the article. In response to the court's questions, he declared that he stopped reading when he realized Berry was mentioned and that he would not be influenced by it. The foreman learned only that Berry was a disbarred attorney. This information may not have impressed him favorably, but we conclude it was not so prejudicial as to deny Berry a fair trial. *Id.*

Whether this incident contributed to a cumulative prejudicial effect we shall consider later in this opinion.

### ADMITTING EVIDENCE OF OTHER MISCONDUCT:

On the first day of trial, the court let the prosecutor develop evidence concerning Berry's relationship with Barnes and Herzberg but prohibited detailed inquiries about misconduct not covered by the indictment. On the next day, over Berry's objection, the prosecutor elicited testimony from Barnes that Berry warned him against cooperation with the government:

> [he told me,] however, be careful as to what areas that I touch on, so that I didn't harm either he or several business deals that he and I were involved in together.

The prosecutor pursued this line until the court *sua sponte* ruled the evidence inadmissible and cautioned the jury:

> conversations alluded to by the witness that occurred at the County Jail with the defendant, the Court has decided that those conversations are not material, or not relevant to the charges before this Court. The jury is therefore instructed to disregard that evidence. The Court strikes the same.

■ A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate. *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980); *United States v. Carlos*, 478 F.2d 377 (9th Cir. 1973) (giving jurors impression they may not perform traditional fact finding functions not easily cured).

■ The jury could not have been significantly prejudiced by evidence that Berry engaged in "business deals" with Barnes. It conveyed at most a faint suggestion that Berry had participated in Barnes' other illegal ventures. This improper suggestion was adequately cured by the judge's instruction.

## IMPROPER CLOSING ARGUMENT:

In closing argument, the prosecutor told the jury that the government had taken "great pains" to keep Barnes and Herzberg apart so the jury could trust them:

> The government, knowing that you people would like to get to the truth, kept them apart from each other, presented their testimony, each untainted by the other.

■ The argument was improper because the prosecutor may not imply that the government has taken steps to assure the veracity of its witnesses. *United States v. Roberts*, 618 F.2d 530–536 (9th Cir. 1980). A jury may naturally doubt the testimony of witnesses who have agreed to cooperate in exchange for favors. The prosecutor may bolster their credibility with corroborating extrinsic evidence, but he may not indicate that the government has arranged for credible testimony.[3]

Two other cases have recently come to our attention in which prosecutors from Phoenix made improper arguments.[4] We repeat for their benefit and for the benefit of others, the Supreme Court's classic admonition:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1334 (1935). *See also, United States v. Perez*, 491 F.2d 167, 174 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974) (prosecutor should refrain from arguments diverting jury from their duty to decide case only on the evidence). We should not have to repeat these admonitions.[5]

---

3. The government insists that this argument simply refuted a charge of collusion. But the statements went further, indicating that the government had taken an active role, manufacturing a situation in which collusion was impossible and, that the witnesses remained untainted for the jury.

4. *United States v. Roberts*, 618 F.2d 530 (9th Cir. 1980); *United States v. Bemis*, 620 F.2d 311 (9th Cir. 1980) (Memorandum disposition).

5. We indicated at oral argument that we are prepared to cite errant prosecutors who persist in such misbehavior and we shall not hesitate to impose sanctions. Continuing to issue admonitions serves little purpose if we affirm convictions in criminal cases while tolerating

*PRESERVING THE ISSUE FOR APPEAL:*

Berry did not object to the prosecutor's argument so we may reverse only if the misconduct constituted "plain error." *United States v. Rich*, 580 F.2d 929, 936 (9th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 33 (1978). Under the plain error doctrine, this court has discretionary authority to grant review when the defendant failed to preserve an issue with a proper objection. *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978).

*Applying the Plain Error Doctrine*

■ Before granting review under the plain error doctrine, we consider (1) whether the error or misconduct was serious and (2) whether the reasons for requiring an objection apply.

■ This court will not grant discretionary review unless the error of misconduct affected "substantial rights" of the defendant. *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405, (1979); Fed.R. Crim.P. 52(b). The test for substantiality is similar to that for prejudicial error:

Plain error is not determined in a vacuum. The prejudicial nature of unobjected-to error must be determined by reference to the whole case. [citation omitted] Particularly we should attempt to determine the impact of the error on the jurors' deliberations. If the probability is high that the error materially affected their verdict, reversal may be justified.

*United States v. Segna*, 555 F.2d 226, 231 (9th Cir. 1977). *See also, United States v. Lopez, supra*, 575 F.2d at 685 (9th Cir. 1978) (error may be sufficiently serious to prompt review, but not reversal).

■ This court may also consider whether the reasons for requiring an objection apply. Objections caution the opposing party to prevent error and avoid misconduct and alert the court to take corrective action.

prosecutors who lack judgment, common sense and knowledge of appropriate courtroom conduct and permissible argument.

*See, Stone v. Morris*, 546 F.2d 730, 736 (7th Cir. 1976) (civil case). The defendant may not allow error to go uncorrected and then ask this court to reverse his conviction.

■ The need for an objection may be wholly or partially obviated in a variety of circumstances. For example, the error or misconduct may be so obvious that the trial court should have corrected it *sua sponte. United States v. Lopez, supra*, 575 F.2d at 685. Similarly, no objection is required when the prejudice cannot be corrected or when objection would exaggerate it. *United States v. Young*, 463 F.2d 934, 940 (D.C. Cir.1972); *United States v. Freeman*, 514 F.2d 1314, 1319 n.34 (D.C.Cir.1975), *vacated on unrelated grounds*, 598 F.2d 306 (D.C.Cir. 1979).

This court does not apply the plain error doctrine rigidly.[6] It will grant review whenever:

reversal is necessary in order to prevent a clear miscarriage of justice or to preserve the integrity and reputation of the judicial process.

*United States v. Segna, supra*, 555 F.2d at 231. In the interests of judicial economy, we require the defendant to assert his rights at trial but, in the interest of justice, we may reverse a conviction which is improperly obtained.

■ The prosecutor's misconduct here was not glaring and the prejudice, though not insignificant, is insufficient to persuade us to invoke the plain error doctrine. The misconduct was to imply that the government had manipulated its witnesses so the jury ought to believe them. This argument was only one of many used to bolster the credibility of Barnes and Herzberg, and we hold that it was not decisive in the jury's decision to believe their testimony.

*REBUTTAL ARGUMENT :*

■ In rebuttal argument, the prosecutor responded to Berry's attack on Barnes'

6. We do not employ a two-part test. We weigh the need for an objection and the seriousness of the error or misconduct together. If the harm is serious enough, we may grant review for that reason alone. *See Lopez, supra.*

credibility by suggesting that Berry was responsible for several of the witness's crimes. Berry had argued that Barnes' convictions for fraud-related offenses showed he was untrustworthy. The prosecutor responded:

> [defense counsel] tells you about Barnes. Barnes was free in 1975, told all these things regarding sale of stock of people who died in Colorado. I submit to you, ladies and gentlemen, that the reason that Barnes was free in 1975 to do these things was because he was not awaiting trial. He was not in jail. He was not anything else, and the reason he wasn't is because Herzberg and their lawyer, Dick Berry, kept him out of jail by keeping the S.E.C. stymied for a year. Had the records been produced by these witnesses with their attorney instead of being hidden away, they wouldn't have been free to do the acts they did in 1975.

This was irresponsible argument and counsel properly objected. The court sustained the objection and instructed:

> Members of the jury, it will be up to you to decide what the evidence in this case is and inferences therein. I will instruct you later regarding comments of attorneys.

The next day, the court instructed the jurors that they were the sole judges of credibility, that they were to decide the case on the evidence, and that statements of counsel were not evidence.

These instructions adequately cured the prejudice. The argument was patently foolish and the judge's action reminded the jury of their duty. We will not assume they ignored his instructions. *United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

*MISSTATEMENT OF THE LAW* :

■ In closing argument, Berry insisted that Barnes and Herzberg had not told him of their fraudulent schemes. The prosecutor replied that the two had no reason to withhold the information from Berry because they believed communications with an attorney were privileged. Apparently the prosecutor also believed so because he declared:

> If Barnes had told defendant on or before March 19, 1974, that he had hidden the records and would not turn them over to the SEC, defendant cannot seriously suggest that he would have been able to reveal this confidence to the SEC in the absence of a waiver by his client.

The attorney-client privilege does not protect communications made in furtherance of criminal activities. *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir. 1977).

■ A prosecutor should not misstate the law in closing argument. *United States v. Artus*, 591 F.2d 526, 528 (9th Cir. 1979). Berry did not object to this argument, however, and we do not consider the misconduct serious enough to constitute plain error.

*LAWYER STANDARD OF CONDUCT* :

■ Berry argues that the prosecutor improperly invited the jury to use a stricter "lawyer" standard of conduct to judge him. We read the record differently. The prosecutor argued that Berry was not just a layman involved in a conspiracy but "a lawyer, the person who is sworn to uphold the law as a member of the bar."

The prosecutor was attempting to influence the jurors against Berry, but he was not arguing that a different standard of proof applied to him. Name calling is not an admirable style of argument and we do not condone it, but this court has been reluctant to find it cause for reversal. *See U. S. v. Taxe*, 540 F.2d 961 (9th Cir.), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1976).

Berry did not object to this argument and we do not find it plain error.

*CUMULATIVE ERROR* :

■ In addressing Berry's charge of cumulative prejudicial error, we consider all errors and instances of prosecutorial misconduct which were preserved for appeal with a proper objection or which were plain error. We will also consider errors and

instances of misconduct which we earlier held were adequately cured by the court's instruction. We recognize that a trace of prejudice may remain even after a proper instruction is given. If we find a residue of prejudice, we will take it into account.

We will not consider actions which we held to be not error misconduct or which we decided not to review as plain error.[7]

*THE HIBLER "DOCTRINE":*

This court has declared that it will be especially sensitive to allegations of prejudice when the government's case rests on uncorroborated accomplice testimony. *United States v. Hibler,* 463 F.2d 455 (9th Cir. 1972). The *Hibler* "doctrine" may be restated more generally: the defendant is more likely to be prejudiced by error or misconduct when the government has a weak case. This is simply the logical corollary of the harmless error doctrine which requires us to affirm a conviction if there is overwhelming evidence of guilt. *See, United States v. Potter,* 616 F.2d 384, 393–94 (9th Cir. 1979).

The government's case against Berry rested on the virtually uncorroborated testimony of Barnes and Herzberg. It was a weak case in which the credibility of the prosecution witnesses was a critical element.[8]

■ Berry charges non-constitutional error, so we will affirm if the error is more probably harmless than not. *United States v. Valle-Valdez,* 554 F.2d 911, 915 (9th Cir. 1977). In evaluating this impact, we must keep the *Hibler* "doctrine" in mind.

*PREJUDICE:*

■ We consider the cumulative prejudicial impact of the following: (1) evidence of Berry's "business deals" with Barnes, (2) the jury foreman's knowledge that Berry was a disbarred attorney, and (3) the prosecutor's argument that Berry was responsible for several of Barnes' illegal ventures.

Irrelevant evidence of Berry's "business deals" with Barnes was admitted and stricken, and the jury was instructed to disregard it. We conclude this left no residual prejudicial effect. The evidence was relatively benign and a proper instruction was quickly given.

The fact that Berry's foreman knew he was a disbarred attorney may have prejudiced him slightly, but the foreman was a conscientious juror whose desire to be fair is demonstrated by the fact that he brought his conduct to the court's attention. He stated catergorically that he could set aside what he read and render a verdict solely on the evidence. We conclude that any prejudice to Berry was minimal.

The prosecutor's attempt to blame Berry for Barnes' illegal ventures was prejudicial, but we do not believe it was so prejudicial that it convinced the jury Berry was guilty. It was inexcusable mud-slinging, but it did not relate to any element of the government's case nor could it have significantly resuscitated Barnes' credibility with the jury.

We hold that there was no cumulative prejudice and affirm the conviction.

---

7. Our decision to invoke the plain error doctrine is influenced by the degree of prejudice caused. The cumulative impact of several errors might therefore be sufficient to persuade us to grant review when the impact of each would not. We do not decide whether several errors may constitute "plain error" in the aggregate or whether, once we decline to review an error, we may no longer consider it for any purpose. In this case, we do not consider the cumulative impact sufficient to warrant review.

8. The jury deliberated for two and one-half days before acquitting Berry on four of five counts. At oral argument, government counsel on appeal characterized this as a "compromise verdict."