**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roni NADLER, Dorian Nadler,
Defendants-Appellants.**

**Nos. 81–1129, 81–1137.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1982.

Submission Withdrawn July 21, 1982.

Resubmitted Aug. 23, 1982.

Decided Feb. 8, 1983.

and possession of counterfeit plates, 18 U.S.C. §§ 471, 474.

The appeals were consolidated for briefing, oral argument and disposition purposes.

We note jurisdiction and affirm.

## BACKGROUND

Victory Printing was a printing business owned and operated by co-defendants Shlomo Kapelnikov and Joshua Malka, and was located in North Hollywood, California. The co-defendants leased the premises from the owner Theresa Calcagnini.

Armed with a warrant, United States Secret Service Agents raided Victory Printing on September 11, 1980. The agents seized some offset printing and photographic equipment, counterfeit plates and negatives, about $600,000 in counterfeit currency, and two suspects. One of the suspects, Dean Munt, immediately decided to cooperate with the agents.

On September 19, 1980, a federal grand jury indicted Dorian and Roni Nadler, Munt, and two others not involved in this appeal. Prior to trial, the District Court determined that the affidavits in support of the search warrant failed to conform with the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and granted the motion of co-defendant Kapelnikov (co-owner of Victory Printing), joined in by the Nadlers, to suppress all of the physical evidence seized in the search.

None of the items so suppressed was offered as evidence against the Nadlers.

During preliminary proceedings on the day of trial, the Nadlers orally moved, *in limine,* to exclude all incriminating statements and in-court testimony by Munt on the grounds that the same was tainted fruit of the illegal search. The District Court denied the motion without stating the reasons or making any finding of fact.

At trial, Munt testified extensively about the operation, implicating each of his co-de-

Elliott Aheroni, Encino, Cal., for Roni Nadler.

P. Vernon Zeitsoff, Los Angeles, Cal., for Dorian Nadler.

Richard E. Drooyan, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE and CANBY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge:

Appellants Roni Nadler and Dorian Nadler (Nadlers) have separately appealed their respective judgments of conviction and sentence for conspiracy to print, possess and transfer counterfeit federal reserve notes in violation of 18 U.S.C. § 371, and for the substantive crimes of counterfeiting

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

fendants. His testimony was corroborated in part by the testimony of Secret Service Agents who had had the print shop under surveillance for the two days prior to the search of the premises and the arrest of Munt. Munt also testified as to a previous counterfeiting operation involving himself, the Nadlers, and two other individuals. That operation was conducted at a different print shop (F & Z Printing) and ended about a month before Munt and Dorian Nadler decided to begin the counterfeiting operation which resulted in the charges herein.

During the course of the trial, both the U.S. Attorney and a Secret Service Agent made allegedly improper references to inadmissible evidence in the jury's presence. The District Court denied the Nadlers' motions for a mistrial.

## DISCUSSION

### I. *Munt's Testimony*

Appellants contend that the District Court erred in denying the motion to exclude Munt's testimony as the tainted fruit of the unlawful search. We need not reach the question here, however, because we are satisfied from the record that neither of the Nadlers has made the required threshold showing that he had a legitimate expectation of privacy in the total area searched, and thus that his personal Fourth Amendment rights were violated.

We note that the issue of whether the Nadlers had a legitimate expectation of privacy in the premises of Victory Printing was not specifically raised by any party in the District Court, and the District Court was not requested to and did not enter any findings on that issue. Following oral argument here, we sua sponte raised the issue and requested supplemental briefing, which has now been supplied.

Kapelnikov, a co-owner of Victory Printing, successfully brought a pretrial motion to suppress evidence seized from his shop. The Nadlers orally joined in the motion during the hearing. For this reason, the record is not clear as to the outcome of their individual joinder except that the press and plate maker purchased by Dorian

Nadler and Munt were suppressed. We assume, therefore, that the District Court found the Nadlers had standing as to these two items.

During the motion *in limine* to exclude Munt's testimony, the Nadlers argued that because they had standing to object to the search, they had standing to object to the use of Munt's testimony as a fruit of the search. The District Judge denied the motion without stating any reasons. The Nadlers did not request findings or any clarification.

■ The fact that the Government did not specifically raise the expectation of privacy issue during the course of the hearing on the motions to suppress is of no consequence. It was the Nadlers who had "the burden of proving not only that the search ... was illegal, but also that [they] had a legitimate expectation of privacy in [the area searched]." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). *See also Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978); *Simmons v. United States,* 390 U.S. 377, 389–90, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968).

The supplemental briefings by the Nadlers rely on the evidentiary record made before the District Court to support their claim that they had a legitimate expectation of privacy which was invaded by the search. They make no offer of proof of additional evidence to augment the record on this issue.

■ "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). Only defendants whose personal Fourth Amendment rights have been violated may benefit from the exclusionary rule's protections. *Rakas v. Illinois,* 439 U.S. at 134, 99 S.Ct. at 425. To establish that his Fourth Amendment rights have been violated by an unlawful search, a defendant must show that he had a legitimate "expectation of privacy *in the area*

searched." *United States v. Salvucci,* 448 U.S. 83, 93, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980) (emphasis added). The inquiry focuses on the place searched, and while the defendant's possessory interests in either the premises or the seized goods are relevant, they are not dispositive. The Supreme Court has "emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment." *Rawlings v. Kentucky,* 448 U.S. at 105, 100 S.Ct. at 2561.

Moreover, the Supreme Court in *United States v. Salvucci* overruled the automatic standing rule for possession crimes set forth in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ As noted by the Supreme Court in *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), the determination of whether a defendant has a "legitimate expectation of privacy" involves two distinct inquiries:

> The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," . . .— whether, in the words of the *Katz* [*Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)] majority, the individual has shown that "he seeks to preserve [something] as private." . . . The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable'" . . .—whether . . . the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

(Citations omitted). *See also United States v. Mackey,* 626 F.2d 684, 687 n. 4 (9th Cir. 1980).

We apply the above guides to the evidentiary record on appeal. Neither Roni Nadler nor Dorian Nadler had any ownership interest in the Victory Printing business or the building itself. All of the equipment in the shop belonged to co-defendants Kapelnikov and Malka, except for a printing press and a plate maker purchased by Dorian Nadler and Munt expressly for the counterfeiting operation. These items had been suppressed by the District Court.

When the agents entered Victory Printing to execute the search warrant at approximately 9:00 p.m. on September 11, 1980, they discovered Munt in the process of manufacturing counterfeit money and placed him under arrest. Dorian Nadler was not inside the print shop at that time. The evidence indicates that at the time of Munt's arrest, Dorian Nadler parked his vehicle in front of a liquor store next to the print shop, went into the liquor store, started toward the print shop, and then turned back toward a bank of telephones when he spotted the Secret Service agents. Roni Nadler was not in the vicinity of the print shop at the time of the search, but was subsequently arrested at his home.

The Nadlers claim that they exercised control over the Victory Printing premises, even though neither of them was present at the time of the search, by reason of the locked entrance door, the outside public view of the sign "Closed," and various curtaining against public street view.

On the other side of the coin, Victory Printing was a public business and had a large plate glass window which enabled the agents to see into the back room where the counterfeiting was taking place. Indeed, with the light on at night, one of the agents was able to identify the individuals in the back room.

■ We are satisfied from our perusal of the record evidence that neither of the Nadlers met their burden to demonstrate ownership or possessory interest in the Victory Printing business or the housing thereof, as distinguished from the two items suppressed on their behalf. Further, we are satisfied that from this record they could not demonstrate that either of them held any right, license or privilege to exclude any person from entering the premises involved, or that they had control over who their co-conspirators might admit into the building.

Under the existing law as delineated above, any actual subjective expectation of

privacy within the subject premises either of the Nadlers may have exhibited, when viewed objectively, is not reasonable or justifiable. *Smith v. Maryland,* 442 U.S. at 740, 99 S.Ct. at 2580.

We have diligently searched the evidentiary record made in the District Court and find it so devoid of any material evidence of standing (a legitimate expectation of privacy) on the part of either of the Nadlers that the District Court could go only in one direction; that is, to deny the Nadlers' motion to suppress Munt's testimony. The District Court did not err in doing so.

II. *Admission of Evidence of Prior Counterfeit Activity*

The Nadlers next contend that the District Court abused its discretion by denying their motions to exclude specific portions of Munt's testimony relating to a previous counterfeiting operation. Munt was allowed to testify that in April, 1980, he and the Nadlers set up a counterfeiting operation at F & Z Printing. Munt prepared printing plates from fifty and one hundred dollar bills given to him by the Nadlers, and, along with two other individuals, printed the counterfeit notes. According to Munt, Dorian Nadler helped Munt burn the notes of poor quality, and the rest were given to Roni Nadler, who had told Munt that he had a buyer. Munt further testified that when he and Dorian realized that they were not going to profit from the F & Z operation, they abandoned it and began to plan a second counterfeit operation in July, 1980, which ultimately led to these charges.

■ Fed.R.Evid. 404(b) prohibits the introduction of evidence of other crimes, wrongs, or similar acts as character evidence to prove that the person acted in conformity therewith, but allows the introduction of such evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Even when offered for a proper purpose, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Fed.R.Evid. 403. The District Court's decision to admit such evidence may be reversed only for an abuse of discretion. *United States v. Lutz,* 621 F.2d 940, 944 (9th Cir.1980), *cert. denied,* 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980) and 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981).

■ The District Court admitted Munt's testimony regarding the prior counterfeiting operation to prove the Nadlers' intent to commit the crime as well as their knowledge of the counterfeiting activity, to show that a common counterfeiting scheme was involved in both operations, and as evidence of the background and development of the conspiracy. We agree that the evidence in question is admissible under Fed.R.Evid. 404(b). Since the evidence here was offered for the legitimate purposes of showing a common scheme or plan and the background and development of the conspiracy, the Nadlers' contention that the testimony should not have been admitted for the purpose of proving intent unless and until they asserted a lack of intent, even if accepted, does not preclude admission of the evidence. *United States v. Magnano,* 543 F.2d 431, 435 (2d Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Fassler,* 434 F.2d 161, 162 (9th Cir.1970), *cert. denied,* 401 U.S. 1011, 91 S.Ct. 1263, 28 L.Ed.2d 548 (1971).

■ We further note that the District Court weighed the probative value of the evidence for these limited purposes against the likelihood that its admission would prejudice the Nadlers (Fed.R.Evid. 403) and acted to minimize any prejudice by giving cautionary instructions concerning the testimony about the F & Z operation. District Courts have wide discretion in determining whether the probative value of evidence is outweighed by its prejudicial character. *United States v. Bosley,* 615 F.2d 1274, 1278 (9th Cir.1980).

We conclude there was no abuse of discretion in the District Court's decision to admit the testimony.

### III. *Governmental Misconduct*

During the course of the trial, the U.S. Attorney made a motion in front of the jury to admit a document which had previously been ruled inadmissible. The document, a prior statement given by Munt to Secret Service Agents, was referred to twice during cross-examination by defense counsel. The District Court denied defense counsel's motion for a mistrial.

Later that afternoon, a Secret Service Agent referred twice during his testimony to the search warrant which had been held invalid and to the counterfeit money which had been suppressed. After the first mention of the search warrant, the court struck the improper testimony and conducted an off-the-record discussion with Government counsel to assure that no further mention would be made of the suppressed evidence. Immediately thereafter, however, the agent again referred to the search warrant and to the counterfeit bills seized during the search of the print shop.

The court immediately suspended further testimony by the agent and, after the jury was excused for the day, questioned the witness. The agent, an eleven-year veteran, responded that he knew of the motion to suppress the evidence seized under the warrant, but that he had not been cautioned to avoid any reference to the evidence or to the warrant itself, although he was aware that since the motion to suppress had been granted, he should not have made any such references. He further explained that his slips were inadvertent.

Following this inquiry, the court denied the Nadlers' motion for a mistrial, reasoning that the jury could easily have concluded from the witness' testimony that the agents did not discover anything when they entered Victory Printing, and thus that any prejudice to the Nadlers was speculative. The court later instructed the jury that they were to draw no adverse inferences as to why the items were not received into evidence.

The Nadlers claim that the cumulative effect of the successive alleged misconduct of the prosecutor and the witness was to deprive them of the opportunity for a fair trial. They contend that the prosecution's statement before the jury, followed by the agent's references to the invalid search warrant and the illegally seized bills, suggested to the jury that other evidence of the Nadlers' guilt was being withheld, and that this, in turn, led the jury to speculate about the nature of that withheld evidence. Moreover, the Nadlers submit that the impression made on the jury was not erased by the court's curative instructions.

Our review of the record satisfies us that the Nadlers suffered no prejudice from the references by the prosecutor or witness to inadmissible evidence. We will reverse only if it appears more probable than not that the misconduct in question materially affected the jury's verdict. *United States v. Tham,* 665 F.2d 855, 860 (9th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2010, 72 L.Ed.2d 466 (1982); *United States v. Berry,* 627 F.2d 193, 201 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). This court must give great deference to the District Court's handling of the alleged misconduct during trial, since that court is in a better position to understand the circumstances surrounding the incident and to evaluate its impact. *United States v. Tham* at 860.

In the present case, since the prosecutor had previously sought to admit Munt's prior statement, the jury already knew of its existence and of the defense's objection to its admission at the time the Government renewed its motion. In addition, the District Court cautioned the jury that they were to draw no adverse inferences from the references to items not admitted into evidence. This court has held that proper jury instructions can go a long way to cure any prosecutorial error. *United States v. Vargas-Rios,* 607 F.2d 831, 838 (9th Cir.1979). Thus, we conclude that the District Court did not abuse its discretion in denying the Nadlers' motion for mistrial. *United States v. Tham,* 665 F.2d at 860. Because we decide that the Nadlers suffered no prejudice from the prosecutor's

conduct, we do not reach the issue of whether the prosecutor's actions were in fact error. *United States v. Monroe,* 552 F.2d 860, 865 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977).

■ For similar reasons, we further conclude that the Nadlers suffered no prejudice from the agent's references during his testimony to the invalid search warrant and the suppressed counterfeit bills. Prior to the agent's testimony, Munt, in response to the cross-examination by Roni Nadler's attorney, was allowed to testify that during the search of Victory Printing, he was apprehended red-handed with $600,000 in counterfeit bills. Thus, at the time of the witness' improper references, the jury had already been made aware of the presence of the counterfeit money at the print shop during questioning by the defense. The agent's references therefore had "no substantial adverse effect upon the fairness of the trial." *Stoppelli v. United States,* 183 F.2d 391, 395 (9th Cir.), *cert. denied,* 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950).

Moreover, the agent stated that his references to the inadmissible evidence were not deliberate. The District Court acted quickly to suspend the agent's testimony to avoid any further reference to suppressed evidence, and carefully examined the circumstances surrounding the incident before denying the Nadlers' motion for a mistrial. The court also gave appropriate curative instructions to the jury at the close of the trial. In light of these facts, we find no abuse of discretion in the District Court's denial of the Nadlers' motion for a mistrial on the ground of witness misconduct. *Id.*

■ Finally, we decide that the cumulative effect of the misconduct of the prosecutor and witness, if any, resulted in no prejudice to the Nadlers. *United States v. Berry,* 627 F.2d at 200–201, requires this court to examine the cumulative effect of several errors when determining prejudicial effect. Whether the alleged errors prejudiced the Nadlers' rights to a fair trial depends in turn upon the strength of the Government's cases against them; the

stronger the prosecution's case, the less likely that a defendant would be prejudiced by error or misconduct. *United States v. Berry,* 627 F.2d at 201; *United States v. Hibler,* 463 F.2d 455 (9th Cir.1972). The prosecution relied heavily on the testimony of Munt, who testified in detail about the counterfeiting operations, and implicated both of the Nadlers. His testimony was corroborated in part by the testimony of Secret Service Agents, who testified that they had observed Roni Nadler in the rear room of Victory Printing on the morning of September 10, and that they had observed Dorian Nadler and Munt coming and going from the print shop throughout the day of September 11, the day of the search and Munt's arrest, even though the shop was closed to the public. The Government also offered testimony from two shopkeepers who sold rag paper (the kind most similar to the paper on which currency is printed), ink and chemicals to Dorian Nadler. In light of the strength of the evidence of the Nadlers' guilt presented by the Government, and of the fact that in each instance defense counsel were the first to bring the existence of the inadmissible evidence to the jury's attention, we conclude that the District Court properly denied the Nadlers' motions for mistrial.

## IV. *Sufficiency of the Evidence*

■ The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Government, the jury could reasonably conclude that the defendant was guilty beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Larios,* 640 F.2d 938, 940 (9th Cir.1981).

■ We conclude that the evidence against the Nadlers, as outlined above, is sufficient to support their convictions. This court has held that even the uncorroborated testimony of one witness, even that of an informant, may be sufficient to uphold a conviction. *United States v. Larios,* 640 F.2d at 940; *United States v. Paduano,* 549

F.2d 145, 150 (9th Cir.), *cert. denied,* 434 U.S. 838, 98 S.Ct. 129, 54 L.Ed.2d 100 (1977); *Proffit v. United States,* 316 F.2d 705, 707 (9th Cir.1963).

The judgments of conviction and sentence appealed from in causes No. 81–1129 and No. 81–1137 are each affirmed.

AFFIRMED.