UNITED STATES of America, Plaintiff,

v.

ARTICLES OF DRUG CONSISTING OF FOLLOWING: AN UNDETERMINED QUANTITY OF 100–CAPSULE BOTTLES, LABELED IN PART: (bottle) "IMPORTED FROM NEW ZEALAND NEPTONE LYOPHILIZIED–HOMOGENIZED MUSSELS 100 Capsules, 260 mg. Manufactured by Aquaculture Corporation, Redwood City, CA 94063***", et al., Defendants.

No. C–83–0864 EFL.

United States District Court, N.D. California.

Aug. 15, 1983.

Joseph P. Russoniello, U.S. Atty., John F. Barg, Chief Asst. U.S. Atty., Civ. Div., Patrick Ramirez S. Bupara, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Paul L. Perito, Frederick H. Graefe, Edward John Allera, Frank Koszorous, Jr., Perito, Duerk, Carlson & Pinco, P.C., Washington, D.C., for defendants and claimant; Stephen C. Gerrish, Thoits, Lehman & Love,

A Professional Corp., Palo Alto, Cal., of counsel.

## ORDER

LYNCH, District Judge.

On April 22, 1983, the Food and Drug Administration (FDA) seized quantities of claimant Aquaculture Corporation's (Aquaculture) green lipped mussel product, Neptone. The product was seized at the processing facilities of E. Hirschberg Freeze Drying, Inc. (Hirschberg), located in San Leandro, California.[1] Hirschberg is not a party to this litigation.

Although the seizure took place on April 22, the warrant for arrest of property was not issued until April 26, or executed by the Marshal until May 13. The seizure apparently was made pursuant to an embargo notice issued by the State of California, which read in part: "Court directed FDA seizure re Misbranding et al." This "embargo" amounted to a warrantless arrest or seizure of property, which claimant contends violated its Fourth Amendment rights and should be quashed.

It is clear that the FDA was involved in the execution of the state embargo. Indeed, FDA agent Roh was present at and participated in the April 22 action. When the federal government "has a hand in" a seizure "before the objective is accomplished," it is a federal seizure and federal constitutional standards apply. *Lustig v. United States,* 338 U.S. 74, 78–79, 69 S.Ct. 1372, 1373–74, 93 L.Ed. 1819 (1948). The Court therefore looks to federal law to determine whether the April 22 seizure was proper.

*Aquaculture May Object to the Seizure*

The issue of "standing" to object to warrantless searches is resolved under federal law. *United States v. Cella,* 568 F.2d 1266, 1278–79 & nn. 8, 9 (9th Cir.1977). The

---

1. A previous seizure of Neptone had been made by the FDA at a different location pursuant to a warrant issued on the government's complaint. The warrant for this first seizure was not issued by an independent judicial officer upon a finding of probable cause, as required by *United States v. Device Labeled Theramatic,* 641

F.2d 1289 (9th Cir.1981). This Court quashed the warrant and granted the government a stay of three days. Prior to the second seizure at issue here, however, the government failed to make any good faith effort to obtain a valid warrant.

relevant inquiry is whether claimant had a reasonable expectation of privacy at the Hirschberg facility, *United States v. Robinson,* 698 F.2d 448, 454 (9th Cir.1983), which was neither owned nor operated by claimant.

■ A person can have a legally sufficient interest in a place other than his or her home to warrant Fourth Amendment protection from unreasonable government intrusion. *Id.* at 454; *United States v. Robertson,* 606 F.2d 853, 858 & n. 2 (9th Cir. 1979). The existence of such an interest is a preliminary issue which this Court resolves based on the uncontradicted declarations of the parties. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947).

■ The Ninth Circuit recently has enumerated the factors to be considered when determining whether a claimant has a reasonable expectation of privacy. In *United States v. Robinson,* 698 F.2d 448 (9th Cir. 1983), the court considered

> whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has the right to exclude others from the place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.

*Id.* at 454 (citing *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir.1981)). The Ninth Circuit reasoned in *United States v. Nadler,* 698 F.2d 995 (9th Cir.1983), that a determination of "legitimate expectation of privacy" involves two distinct inquiries: (1) whether the individual, by his conduct, has exhibited an actual, subjective expectation of privacy and has shown that he seeks to preserve something as private, and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable and the expectation, viewed objectively, is justifiable under the circumstances. *Id.* at 999 (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)).

■ Declarations filed by the Hirschberg plant manager, the President of Aquaculture, and the FDA agent provide the following information. The seized material was held by Hirschberg as agent solely for the benefit of Aquaculture. Hirschberg exercised no control over the product and made no independent decisions regarding its handling or disposition. No one dealt with the product except at the direction of Aquaculture. The material was locked in a secure area not open to the public; only Hirschberg employees or others designated by Hirschberg had access, and only Hirschberg had a key to the facilities. Hirschberg and Aquaculture had a confidentiality agreement whereby Hirschberg and its employees would not disclose any details of the final composition of Neptone or of the processing work done for Aquaculture.

Applying the Ninth Circuit's *Robinson* and *Nadler* criteria to these facts, the Court finds that Aquaculture had a legitimate expectation of privacy at the Hirschberg facilities. Aquaculture had a clear property interest in the material seized. Through its security and confidentiality arrangements with Hirschberg, Aquaculture effectively was able to exclude non-approved persons from entering the area, handling the goods, or learning about the processing details. These arrangements were reasonable precautions to maintain Aquaculture's privacy at the facilities, and indicate that Aquaculture had an actual, subjective expectation of privacy regarding its product stored at Hirschberg. The Court finds this expectation highly reasonable and justifiable from both objective and societal points of view: stored foodstuffs demand high security, as do trade secrets regarding processing. Whether Aquaculture reasonably expected the Hirschberg facilities to be subject to regular government *inspection* is irrelevant here, as the act in question was a premeditated *seizure* of specified items. *See United States v. Device Labeled Theramatic,* 641 F.2d 1289, 1294–95 (9th Cir.1981). Aquaculture may properly object to the government's warrantless search in this case.

*Warrantless Searches and Seizures*

■ It is well settled that where it is practicable to obtain a warrant, the government must do so. *E.g., Vale v. Louisiana,* 399 U.S. 30, 34–35, 90 S.Ct. 1969, 1971–72, 26 L.Ed.2d 409 (1970). Indeed, where the government knows in advance the location and description of evidence and intends to seize it, as was the case here, the requirement of a warrant imposes no constitutionally recognizable inconvenience. *Coolidge v. New Hampshire,* 403 U.S. 443, 470–72, 91 S.Ct. 2022, 2040–42, 29 L.Ed.2d 564 (1971). Only in a few special and well-defined situations may a warrantless search of a home or office withstand constitutional scrutiny, even though the authorities have probable cause to conduct the search. *Vale v. Louisiana,* 399 U.S. 30, 34–35, 90 S.Ct. 1969, 1971–72, 26 L.Ed.2d 409 (1970); *United States v. Device Labeled Theramatic,* 641 F.2d 1289, 1292 (9th Cir.1981).

■ Here there is no evidence of any exceptional situation that would justify a warrantless seizure. The government does not contend that it was responding to an emergency or that it was in hot pursuit. There is not evidence that the goods were in the process of being destroyed or were about to be removed from the premises. The government offers no evidence that it was impracticable to obtain a warrant. *See Vale v. Louisiana,* 399 U.S. 30, 34–35, 90 S.Ct. 1969, 1971–72, 26 L.Ed.2d 409 (1970).

■ The government argues that Hirschberg consented to the seizure, and therefore a warrant was not required. *See Schneckloth v. Bustamente,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The Court must decide as a question of fact to be determined from the totality of all the circumstances whether the apparent consent in this case was truly voluntary or was the product of duress or coercion, express or implied. *Id.* at 227, 93 S.Ct. at 2047. If under all the circumstances it appears that the consent was granted only in submission to a claim of lawful authority, then the consent is invalid and the search unreasonable. *Id.* at 233, 93 S.Ct. at 2050; *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968).

■ Joe Sensiba, the Hirschberg Plant Manager, stated in his declaration that he was told by his employer, Mr. Hirschberg, that Hirschberg "had agreed to allow the FDA to *inspect* our San Leandro facility. Accordingly, I was directed by Mr. Hirschberg to open the facility for the FDA upon their request." (emphasis added). FDA agent ROH stated only that he "asked Mr. Hirschberg if he would make arrangements for me to *enter* his facility .... Mr. Hirschberg indicated that he wanted to cooperate with the FDA ...." (emphasis added).

These declarations do not clearly indicate whether Hirschberg originally anticipated a seizure, or instead expected a customary regulatory inspection. To the extent Hirschberg thought he was cooperating with a regular FDA inspection, consent is not an issue because Hirschberg was required to comply with a warrantless regulatory *inspection* under 21 U.S.C. § 374. *See United States v. Jamieson-McKames Pharmaceuticals, Inc.,* 651 F.2d 532, 538–39 & n. 10 (8th Cir.1981), *cert. den.* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982).

■ However, the April 22 "embargo" was no customary inspection, but rather a pre-planned seizure of identified goods. While it is not clear at what time Hirschberg knew the FDA intended to seize the Neptone, it is apparent that at some point before the seizure Hirschberg and President Dorst of Aquaculture believed that the FDA had a warrant or court order, or that the embargo notice represented the authority of the court. President Dorst stated in his uncontradicted declaration:

[Joe Sensiba, the Hirschberg Plant Manager] told me FDA representatives had been at the plant asking questions and told him they might be back in a couple of days. He called me later *when the warrant was served* [sic], and *I told him to cooperate if they had a court order* and that there was nothing I could do to stop it. (emphasis added)

To the extent Hirschberg consented to the seizure due to a belief that the government had a warrant or court order, or because the language of the embargo notice indicated this was a "court directed FDA seizure," this Court finds that Hirschberg consented only in submission to a claim of lawful authority. The government has not carried its burden, *Bumper v. North Carolina,* 391 U.S. 543, 548–59, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968), of showing that Hirschberg gave a valid consent to the FDA seizure.

Absent the showing of any exigent circumstances or consent, there is no excuse for the government's failure to obtain a valid warrant before the April 22 arrest of claimant's property. Accordingly, the second warrant of arrest is quashed. The seized goods are released to claimant Aquaculture effective immediately.

IT IS SO ORDERED.