**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Rudy THAM,
Defendant-Appellant.**

No. 80–1362.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1981.

Decided Oct. 5, 1981.*

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 16, 1981.

---

* Lodged with Clerk's office September 16, 1981.

Richard L. Rosenfield, Flax & Rosenfield, Los Angeles, Cal., for defendant-appellant.

Vincent L. Gambale, Asst. U. S. Atty., Washington, D. C., for plaintiff-appellee.

Before CHOY and WALLACE, Circuit Judges, and WYATT,** District Judge.

** Honorable Inzer B. Wyatt, United States District Judge, Southern District of New York, sitting by designation.

WALLACE, Circuit Judge:

Tham appeals from a conviction on 15 counts of embezzlement of union assets, 29 U.S.C. § 501(c), and 4 counts of false entry in union records, 29 U.S.C. § 439(c). He was ordered to spend six months in prison, pay $50,000 in fines, and he was placed on probation for four years. One of the conditions of probation was that he make restitution to the union. We affirm.

I

Tham was Secretary-Treasurer, the chief executive officer, of Local 856 of the Freight Checkers, Clerical Employees and Helpers Union, an affiliate of the International Brotherhood of Teamsters. Tham was also a member of several local and national Teamster committees. The government charged that Tham used union funds for non-union purposes, and made false entries in union records concerning those expenses.

The government alleged that Tham spent union funds on travel and entertainment expenses in Lake Tahoe and New York and that most of the expenditures were made on behalf of Aladena (Jimmy) Fratianno. The government also alleged that Tham spent union funds on gifts and entertainment for other friends not related to union business. Tham concedes that these expenditures were made, and that they were made from union funds. He claims, however, that the funds were spent on union business. Specifically, he contends that he spent money on Fratianno because Fratianno was attempting to develop eye and dental care plans suitable for the union. Tham argues that the union's bylaws permitted him to spend union funds on entertainment and travel that would benefit the union, directly or indirectly, and that his expenditures fell within those permitted by the bylaws.

II

Tham first contends that the district judge erred in failing to instruct the jury

concerning the specific provisions of the bylaws that Tham claims authorized him to spend union funds in the way he asserts he did. In his brief, Tham summarizes his argument as follows: "The critical factual issue for the jury to determine was whether [Tham] had a good-faith belief that his expenditures were for the benefit of the union." Tham argues that his good-faith belief was established by his adherence to the bylaws of the union. Thus, he asserts that the judge should have instructed the jury on the specific bylaws.

■ The district judge gave the following pertinent instructions to the jury:

[T]he government must prove beyond a reasonable doubt that the defendant did not have a good-faith belief that the union funds were spent for the benefit of the union. Unless you are convinced beyond a reasonable doubt that the defendant lacked a good-faith belief that the expenditure of the funds was for the benefit of the union, then an embezzlement, theft, abstraction or conversion would not have occurred within the meaning of the law.

·        ·        ·        ·        ·

In evaluating the defendant's intent, you may consider whether or not he acted in good faith under the applicable provisions of the international constitution and bylaws of Local 856, which are in evidence before you.

·        ·        ·        ·        ·

Now, the bylaws may establish broad purposes for all kinds of different things that may be done for the benefit of the union.... But no matter how broad the bylaws may be in that regard, that does not mean that an officer can spend money for any old thing, ... or for personal purposes of his own.

These instructions constitute an accurate statement of the law. The judge adequately covered Tham's theory of the case by instructing that the jury could consider the bylaws in determining whether Tham held a good-faith belief that he was using the funds for a union purpose. It was not an abuse of discretion for the district judge to refuse to read the specific bylaws to the jury, or to instruct the jury about those specific bylaws. *See United States v. Shelton*, 588 F.2d 1242, 1252 (9th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979).

■ Tham raises a related issue concerning the district judge's supplementary instruction in response to the jury's request to have certain testimony reread to them. A witness called by Tham, Albert Brundage, a labor lawyer who had participated in the drafting of the bylaws, testified concerning the applicable provisions of the bylaws and the chief executive officer's discretion to interpret them. The jury requested that Brundage's testimony be read to them. The government expressed concern that the jury would infer that the law was as Brundage stated it, not as the court instructed. The district judge instructed the jury that they were entitled to hear the testimony, but that they should follow the court's instructions concerning the law, not Brundage's exposition of the law. The judge then asked the jury whether they still wanted to hear the testimony, indicating that it was perfectly all right if they did. The jury then withdrew its request to hear the testimony.

The response to a request for additional instructions rests with the discretion of the district judge. *United States v. Collom*, 614 F.2d 624, 631 (9th Cir. 1979), *cert. denied*, 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980). Tham argues that the instruction implicitly discredited Brundage's testimony by indicating that the testimony was inconsistent with the law. This is not a reasonable inference to draw from the instruction. Rather, the instruction merely indicated that to the extent there was any discrepancy, the jury was to follow the court's instructions. This is hardly, as Tham characterizes it, "coercive." The district judge made it clear that the jury could hear the testimony if it still found the testimony worthwhile in light of the court's cautionary instruction. No abuse of discretion was demonstrated.

## III

Tham contends that the district court erred in failing to order the government to disclose the identity of a confidential informant, or in failing to require an *in camera* examination of the informant. The informant, identified only as Source Four, stated in an affidavit used as a basis for a wiretap application in a related investigation that he overheard Tham, Fratianno, and Tommy Marson discussing an eye care plan that they were promoting with regard to unions on the West Coast. This discussion took place at a concert in Tarrytown, New York. Tham's travel and entertainment expenses for this concert and trip to New York are the basis of one of the counts of the indictment before us.

Tham argues that Source Four's information that he was discussing an eye care plan is exculpatory. He contends that if he was in fact discussing an eye care plan with Fratianno at this concert, he was spending union funds to benefit the union. Tham claims that it was crucial to his defense to have the opportunity to interview Source Four.

During trial, Tham moved for disclosure or an *in camera* interview of Source Four. Rather than agree to this, the government offered to stipulate to the truth of the statements made by Source Four in his affidavit. The parties then stipulated that Tham, Fratianno, and Marson had been at the particular concert "and discussed an eye care plan they were promoting at that time with regard to unions on the West Coast." Based upon that, the district court denied Tham's motions.

Despite the stipulation, Fratianno, as a government witness, continued to deny that there was any discussion at that concert about an eye care plan for the benefit of the unions. Rather, he contended that if there was any discussion similar to this, it concerned the setting up of a private contact lens enterprise. Both sides questioned Fratianno about his recollection of this conversation. In addition, during closing argument, the prosecutor argued that even if there was discussion at that concert about an eye care plan, this was a minor incident over a long period of time. He emphasized Fratianno's testimony that he was not involved in an eye care plan, but with a contact lens venture. Over Tham's objection, the district court permitted this argument stating that "on this particular point his argument is proper." Subsequently, the prosecutor argued that the stipulation could be interpreted to mean that the parties discussed the contact lens venture, rather than a union eye care plan at the concert. Tham interposed an objection to this argument which was sustained. The district court later instructed the jury that a stipulation must be accepted as a proven fact.

Tham's continued contention that the identity of Source Four must be revealed is without merit. The government is entitled "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). This privilege must give way, however, "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense . . . ." *Id.* at 60–61, 77 S.Ct. at 627–28. The district judge, in his discretion, must balance the government's interest in non-disclosure with the defendant's interest in obtaining evidence. *United States v. Anderson*, 509 F.2d 724, 729 (9th Cir.), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). The defendant has the burden of showing the need for disclosure. *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976), *cert. denied*, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977).

In the case before us, the district judge did not abuse his discretion in ruling that Tham failed to meet his burden. Tham sought disclosure of Source Four's identity to examine him about the conversation at the concert. The stipulation was the most favorable evidence Tham could have secured concerning that conversation. As a result of the stipulation, it became a proven fact that a conversation concerning a union

eye care plan had taken place. Tham has not shown how the disclosure of Source Four's identity would have been of any assistance to his case. That any information that Source Four might have provided might have been useful to Tham is no more than speculation, which is insufficient to require disclosure or an *in camera* hearing. *See United States v. Kim*, 577 F.2d 473, 478–79 (9th Cir. 1978).

Our analysis is not changed by the prosecutor's so-called "attacks" on the stipulation. After the parties entered into the stipulation, both sides continued to elicit testimony from both Fratianno and Tham pertaining to the conversation at the concert. Neither side objected, even though the existence of a conversation concerning a union eye care plan was already a proven fact. Indeed, Fratianno's continued testimony that there was no discussion about an eye care plan at that concert could only benefit Tham as Fratianno's testimony was contrary to facts the government had already conceded. In addition, because the district judge sustained Tham's objections, Tham's complaint about the prosecutor's statements in closing argument is meritless. The district judge adequately instructed the jury pertaining to the impropriety of the prosecutor's statements, and later adequately instructed the jury concerning the proper treatment of the stipulation.

We conclude that the district judge did not abuse his discretion in failing to require the government to disclose the identity of Source Four, or to require an *in camera* examination of Source Four.

### IV

Tham alleges two instances of prosecutorial misconduct that he claims warrant reversal. First, he contends that the prosecutor improperly suggested that Tham had "fixed" an earlier case in which he was a defendant. Second, Tham claims that the prosecutor made improper statements during closing argument.

In assessing claims of prosecutorial misconduct, we must determine whether such misconduct occurred, whether the defendant properly preserved the issue for appeal, and whether the defendant was prejudiced by the misconduct. *United States v. Berry*, 627 F.2d 193, 196–97 (9th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). In making these determinations, particularly the last one, we must ordinarily give great deference to the district judge's handling of the alleged misconduct during the trial. The district judge is ordinarily in a much better position to understand the circumstances surrounding the alleged misconduct and to evaluate its impact. *See Orebo v. United States*, 293 F.2d 747, 749 (9th Cir. 1961), *cert. denied*, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962). In addition, allegations of prosecutorial misconduct, including the allegations made here, are ordinarily not of constitutional dimension. Therefore, if we find prosecutorial misconduct, we will reverse unless it is more probable than not that the misconduct did not materially affect the verdict. *United States v. Valle-Valdez*, 554 F.2d 911, 915–16 (9th Cir. 1977).

### A.

Several weeks before trial in this case, Tham had been tried in the district court in Nevada. The prosecutor in that case was the same as the prosecutor in this case. Prior to trial in the Nevada case, the prosecutor apprised the Nevada district judge that there had apparently been some prior contact between the Nevada district judge and Tham. Before the Nevada district judge was appointed to the bench, he had apparently contacted Tham in an effort to have his stepson placed in a truck driving job. Evidently, Tham was unable to be of assistance. The prosecutor claimed that he raised this issue simply because he was afraid that there might be some hard feelings between Tham and the Nevada district judge which might result in a collateral attack on any conviction in the case. The prosecutor said at that time that he was satisfied that there was no impropriety. At the close of evidence in that case, the Nevada district judge granted Tham's motion for a judgment of acquittal.

In the case before us, the district judge ruled that the disposition of the Nevada case was inadmissible. Despite that ruling, made in Tham's presence, Tham made the following statement during cross-examination, not in response to any question:

Didn't you take me to [Nevada] and I got acquitted up there in [Nevada] because of a violation of the Labor Act? Didn't I get acquitted up there? Didn't the judge say it was a sick trial, didn't he throw it out?

Shortly thereafter, the prosecutor asked Tham if he had known the Nevada district judge before the trial commenced, and if he had ever done a favor for the Nevada district judge. After an objection, the prosecutor again asked Tham whether he had done a favor for the Nevada district judge before the judge had been appointed to the bench, whether he had ever gotten the Nevada district judge's son a job or gotten him into school, or whether he had ever talked to him. Tham's counsel objected, and subsequently moved for a mistrial. The basis for the mistrial motion was that the inference to be drawn from the prosecutor's questions was that Tham had improperly attempted to influence his Nevada case. The district judge denied the motion, stating that Tham's counsel had exaggerated the importance of the prosecutor's questions, and that in any event Tham had invited the questions by his improper mention of the disposition of the Nevada case. Subsequently, the district judge instructed the jury that the Nevada case was irrelevant, and that the jury was to disregard everything that had been said about the case.

■ Tham did invite questions about the Nevada prosecution by his unwarranted raising of his acquittal. His invitation, however, did not extend to a suggestion that Tham's acquittal was caused by improper conduct by the Nevada district judge. Although the prosecutor knew that there had been contact between Tham and the Nevada district judge, he had no basis on which to ask whether Tham had ever done a favor for the Nevada district judge. It was clear from the context of the question that the prosecutor was suggesting that the Nevada district judge had acted improperly in dismissing the case against Tham. Thus, the prosecutor was guilty of misconduct in asking this question. In addition, Tham's counsel adequately preserved this issue for appeal.

We conclude, however, that it is more probable than not that the misconduct did not affect the verdict. Tham argues that the clear inference to be drawn from the prosecutor's questions is that Tham was involved in improperly influencing the Nevada case. The district judge in this case, who thought that Tham's counsel was exaggerating the importance of the prosecutor's questions, did not agree. It is doubtful that a reasonable juror would have believed that Tham had acted improperly by the fact that he had received a phone call from an attorney who subsequently became a district judge. If any impropriety could be remotely inferred, it would be on the part of the Nevada district judge, not Tham. Therefore, the district judge did not abuse his discretion in denying the motion for a mistrial.

### B.

Tham contends that the prosecutor's closing argument was improper in two respects that require reversal. First, Tham claims that the prosecutor improperly vouched for Fratianno's credibility. Second, Tham argues that the prosecutor improperly stated that the indictment had the imprimatur of the Grand Jury, the United States Attorney, and by their nomination and confirmation of the United States Attorney, the President and the Senate.

During the rebuttal portion of his closing argument, the prosecutor argued that Fratianno had a motive for telling the truth because his plea agreement obligated him to do so. The prosecutor argued that if Fratianno violated his plea agreement by lying, he would be subject to several prosecutions for murder, with the possibility of the death penalty.

Tham asks us to compare the argument in this case with the argument in *United States v. Roberts*, 618 F.2d 530 (9th Cir. 1980), in which we reversed a conviction because of an improper closing argument. We have compared these two arguments, and find them easily distinguishable. In *Roberts*, the basis of the reversal was that the prosecutor had argued not only that the government witness was bound to tell the truth by his plea agreement, but, without any evidence in the record, he also argued that there was a government agent in the courtroom during the trial to monitor the witness's testimony. *Id.* at 533–34. In contrast, in the case before us, there is no contention that the prosecutor argued facts that were not in evidence. Therefore, neither the holding nor the reasoning of *Roberts* applies to this case.

In *Roberts*, we went on to add dicta to provide guidance for the district court in the event of a retrial. We discussed the admissibility of a plea agreement promise of truthfulness, and the use of such a promise, once admitted, in closing argument. In the case before us, the issue of the admissibility of the plea agreement has not been presented.

In *Roberts*, we stated that it is improper for a prosecutor to "invite the jury to rely on the government's assessment that the witness is testifying truthfully." *Id.* at 536. A prosecutor commits misconduct if the jury can reasonably believe that he "was indicating a personal belief in the witness's credibility." *Id.* at 537.

■ The argument in the case before us is distinguishable. First, the prosecutor's argument was in rebuttal to the defense counsel's closing argument that attacked Fratianno's credibility. Tham's counsel argued that the plea agreement required Fratianno not to testify truthfully, but to testify favorably to the government. When Tham's counsel argued the motivation of a witness testifying under immunity, it was proper for the prosecutor to rebut that argument by arguing the language of the plea agreement and how it might affect the witness's motivation. Second, the district

judge admonished the jury to treat the testimony of a witness testifying under immunity "with greater care than the testimony of an ordinary witness." The district judge pointed out to the jury that such a witness might have a motive to falsify his testimony to further his own interest. Under these circumstances, the prosecutor's argument, offered in rebuttal, pertaining to the effect of the plea agreement on Fratianno's testimony does not run afoul of the *Roberts* dicta.

■ The second aspect of the prosecutor's closing argument about which Tham complains is the prosecutor's reference to the participation of others in the charges against Tham. Tham's counsel, in his closing argument, contended that "what this case is about, and all it is about, is one prosecutor with one legal theory, trying it out to get Rudy Tham." His closing argument is replete with suggestions that there would be no case against Tham but for a personal vendetta held by the prosecutor against Tham. In *United States v. Polizzi*, 500 F.2d 856, 889–90 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), we held that a prosecutor's reference to the fact that a grand jury had passed on the indictment was proper when made in response to the defense counsel's charge that the prosecutor was pursuing a personal vendetta against the defendant. Tham has not cited *Polizzi*, much less distinguished it. We see no material distinction between our holding in that case and the issue presented in this case. Therefore, we reject Tham's contention that this aspect of the prosecutor's closing argument was improper.

V

Tham's final contention is that the district court erred in failing to dismiss the indictment because of the government's failure to provide the Grand Jury with certain information. Tham argues the government should have read the union bylaws, which Tham claims were exculpatory, to the Grand Jury, should have provided the Grand Jury with evidence of Fratianno's

lack of credibility, and should have presented Fratianno's testimony live, rather than by means of a transcript of earlier Grand Jury testimony.

Tham's contentions are meritless. The general rule in this circuit is that no independent inquiry will be made into the kind of evidence presented to a grand jury, when a duly constituted grand jury returns an indictment valid on its face. *United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974). We have held that a grand jury need not be advised of all matters concerning credibility, and that dismissal of the indictment is only required in extreme situations, as where the prosecutor knowingly presents perjured testimony. *United States v. Thompson*, 576 F.2d 784, 786 (9th Cir. 1978). No such situation exists in the instant case.

AFFIRMED.