981 F.2d 1259
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Wesley CHAPMAN, Defendant-Appellant.
 No. 91-50724.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1992.
Decided Dec. 17, 1992.
 
 Before D.W. NELSON, CYNTHIA HOLCOMB HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Wesley Chapman appeals his conviction for conspiracy to manufacture and possess methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 846 & 841(a)(1), possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), manufacture and attempted manufacture of methamphetamine in violation of 21 U.S.C. §§ 846 & 841(a)(1), and aiding and abetting in violation of 18 U.S.C. § 2. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the conviction.
 
 
 3
 * Chapman argues that the indictment should have been dismissed because his name was only mentioned twice during the grand jury proceedings, and one witness testified to matters over which she had no personal knowledge. Both arguments amount to a contention that the grand jury had insufficient evidence to indict. Grand jury indictments, however, cannot be reviewed for lack of sufficient or competent evidence. United States v. Calandra, 414 U.S. 338, 344-45 (1974).
 
 
 4
 Chapman also argues that the prosecutor's misleading questions violated the Fifth Amendment. Chapman points to no law which prohibits leading questions, and we decline to exercise our supervisory power to prescribe the style of questions that the government may ask. See United States v. Williams, 112 S.Ct. 1735 (1992). To the extent Chapman argues that the independence of the grand jury was compromised by leading questions, we see no constitutional error. For misconduct to violate the constitution, it must significantly infringe upon the grand jury's ability to render independent judgment. United States v. Larrazolo, 869 F.2d 1354, 1357 (9th Cir.1989). Cf. United States v. Gonzalez, 800 F.2d 895, 899 (9th Cir.1986) (erroneous testimony unintentionally given to the grand jury does not infringe upon independence; United States v. Hintzman, 806 F.2d 840, 843 (8th Cir.1986) (misleading grand jury found harmless). No such infringement appears. In any event, whatever error there may have been on account of leading questions or hearsay is harmless. United States v. Mechanik, 475 U.S. 66, 70 (1986).
 
 
 5
 Finally, Chapman argues that the indictment was based on false evidence. There is no indication that the agent's testimony was perjurious or that the government purposefully adduced it, knowing it was false. Dismissal was therefore not required. United States v. Tham, 665 F.2d 855, 863 (9th Cir.1981), cert. denied, 456 U.S. 944 (1982); see also United States v. Gonzalez, 800 F.2d 895, 899 (9th Cir.1986) (agent's erroneous testimony does not justify dismissal).
 
 II
 
 6
 Chapman argues that he was convicted for conduct having to do with the Carlsbad "cook," which was not alleged in the indictment. He asserts that the overt acts charged in the conspiracy count relate only to the Aguanga cook, the two substantive counts relate only to the Aguanga cook, and the grand jury was presented with evidence of only the Aguanga cook, yet the conviction resulted exclusively from evidence of the Carlsbad cook.
 
 
 7
 An amendment occurs when the charging terms of the indictment are altered, literally or constructively, after the grand jury has passed upon them. United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984). A variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. Von Stoll, 726 F.2d at 586. A variance does not require reversal unless it affects the substantial rights of the parties, Id. at 587; Fed.R.Crim.Proc. 52(a), whereas an amendment requires per se reversal. United States v. Pazsint, 703 F.2d 420, 423 (9th Cir.1983).
 
 
 8
 There was no amendment. Chapman was indicted for conspiracy to manufacture methamphetamine, manufacture of methamphetamine, possession with intent to distribute, and aiding and abetting. He was convicted for these acts and there is thus no literal difference between the indictment and the convictions. Nor is there any constructive amendment, since the factual difference between the indictment and the conviction about which Chapman complains--that he was involved in the Carlsbad rather than the Aguanga cook--does not alter the crime charged or affect the sufficiency of the indictment. Von Stoll, 726 F.2d at 586.
 
 
 9
 Likewise, there is no variance between the indictment and the conspiracy conviction or the substantive counts. The indictment charges a conspiracy beginning at an unknown date and continuing up to and including October 15, 1990. All of Chapman's conduct occurred before October 15, 1990. In addition, the overt act charging that on August 31, 1990 Chapman provided chemicals to Bailey to be used in the manufacture of methamphetamine does not specify where the chemicals were to be used. Evidence that Chapman supplied chemicals to Bailey in August corresponds with the indictment. Further, that the grand jury may have been presented with evidence that the methamphetamine was manufactured at a different location (Carlsbad rather than Aguanga) and at a different time is irrelevant to whether Chapman was responsible for the possession with intent to distribute or manufacturing counts, since the location and time of manufacturing of the drug are not elements of these crimes. See, e.g., United States v. Laykin, 886 F.2d 1534, 1542-43 (9th Cir.), cert. denied, 496 U.S. 905 (1990) (variance in indictment as to time of conspiracy harmless since time not a material element of conspiracy).
 
 
 10
 None of Chapman's remaining arguments concerning whether evidence presented to the grand jury varied from the evidence adduced at trial is persuasive. They essentially challenge the adequacy of the evidence and are foreclosed by Calandra.
 
 III
 
 11
 Chapman's argument that the trial court erred in failing to grant his motion for an acquittal hinges on the district court's failure to exclude evidence relating to the Carlsbad cook. Since evidence pertaining to Carlsbad was properly admitted, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir.1989).
 
 IV
 
 12
 Chapman argues that the government used its peremptory challenges on the basis of gender in violation of United States v. De Gross, 960 F.2d 1433 (9th Cir.1992) (en banc). To challenge peremptory strikes, a defendant must show first, that a peremptory challenge was exercised on the basis of gender, and second, that this fact and any other relevant circumstances raise an inference that the prosecutor intended to exclude jurors on the basis of gender. Id. at 1442. Upon making this prima facie showing, the burden shifts to the prosecutor to articulate a nondiscriminatory reason for challenging the venireperson. Id. These steps need not follow in order; once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate questions of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot. Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991).
 
 
 13
 After the second objection to his peremptory challenges, the prosecutor offered a non-discriminatory reason--that the stricken venirepersons had not "adequately shown their stakes in the community to be" fair and impartial jurors. By articulating a gender neutral reason for the peremptory challenge, the government complied with De Gross. In addition, Chapman failed to establish discriminatory intent. Chapman was tried together with his codefendant, Judy Lee Bailey. Nothing in the record suggests how, or why, the prosecutor would have intended to exclude men in a case in which a male and female were tried together for the manufacture of methamphetamine.
 
 V
 
 14
 Chapman argues that the warrantless seizure of certain envelopes and documents pursuant to a parole search violated the Fourth Amendment because the parole officer acted as a "stalking horse," the search was based on false information, and there was no basis for the seizure of papers from his house.
 
 
 15
 * A "stalking horse" is a probation or parole officer who conducts a probation or parole search on prior request of and in concert with law enforcement officers, and acts as an agent for an authority who is constitutionally required to obtain a search warrant. United States v. Richardson, 849 F.2d 439, 441 (9th Cir.), cert. denied, 488 U.S. 866 (1988). If a parole search is used as "a subterfuge for a criminal investigation," the parole officer will be considered a stalking horse for the investigation. Id. Whether or not a parole officer acts as a "stalking horse" is a question of fact, reviewed for clear error. Id. Chapman's parole officer testified that, upon being informed of a delivery of HCL gas to Chapman's house, he authorized the parole search for the primary purpose of determining whether Chapman was "in violation of the terms and conditions of his parole." The district court accepted this reason as the primary reason for the search, and this finding is not clearly erroneous.
 
 B
 
 16
 Chapman, relying on Franks v. Delaware, 438 U.S. 154 (1978), contends that the parole search was based on false testimony. He claims that the investigating officer falsely told the parole officer that Chapman was in possession of HCL gas, when in fact the investigating officer only knew that someone with HCL gas had arrived at Chapman's house. This testimony falls short of the knowing and intentional perjury discussed in Franks. The statement that Chapman possessed HCL is, at most, a highly probable assumption, not an intentional false statement. To assume that Chapman "possessed" some chemicals because a person delivered them to his house does not amount to a constitutional violation.
 
 C
 
 17
 Chapman finally argues that even if the search were authorized, the wholesale seizure of papers from the house was invalid. However, we held in Latta v. Fitzharris, 521 F.2d 246 (9th Cir.1975) (en banc), cert. denied, 423 U.S. 897 (1975), that evidence seized from an authorized parole search can be used for purposes unrelated to the "regulatory" purpose of the search. Id. at 253 (upholding introduction of marijuana evidence from parole search).
 
 VI
 
 18
 Chapman argues that certain methamphetamine exhibits were improperly admitted without establishing the chain of custody or authentication. The government concedes that the evidence was improperly admitted, and so we review for harmless error. Fed.R.Crim.Proc. 52(a). Chapman contends that it was not harmless because the government referred to the evidence in closing argument to refute the possibility that the second cook did not produce methamphetamine. We disagree. Peter Renwick, one of Chapman's co-conspirators, admitted to possessing over five pounds of methamphetamine, and there was substantial direct evidence of Chapman's involvement in the conspiracy. Given Renwick's admission on the possession count, the methamphetamine in Exhibits 14-17, and telephone calls, drug ledgers, and conversations with co-conspirators in which Chapman was involved on the conspiracy count, it is unlikely the erroneously admitted exhibits had any effect on the verdict. United States v. Todd, 964 F.2d 925, 931 (9th Cir.1992) (error in admitting evidence harmless if more probable than not that defendant would have been convicted without evidence).
 
 VII
 
 19
 Chapman contends that the district court abused its discretion in allowing summary testimony by D.E.A. Agent Delaney because it was based on hearsay, it invaded the province of the jury, and it violated Bruton v. United States, 391 U.S. 123 (1968). The admission of summary exhibits and testimony is reviewed for abuse of discretion, United States v. Marchini, 797 F.2d 759, 766 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987), as is the decision to admit expert testimony. United States v. Kinsey, 843 F.2d 383, 387-89 (9th Cir.), cert. denied, 487 U.S. 1223 (1988). Confrontation clause violations are reviewed de novo, United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991), and do not require reversal if the error was harmless beyond a reasonable doubt. Toolate v. Borg, 828 F.2d 571, 575 (9th Cir.1987).
 
 
 20
 Summary testimony is admissible, United States v. Cuevas, 847 F.2d 1417, 1428 (9th Cir.1988), cert. denied, 489 U.S. 1012 (1989), and in light of the complicated investigation of Chapman, we cannot say the district court abused its discretion in receiving Delaney's testimony. Since Delaney was qualified as an expert, her testimony could be based on hearsay. Fed.R.Evid. 703.
 
 
 21
 Delaney's testimony did not impermissibly invade the province of the jury. Chapman urges us to follow United States v. Benson, 941 F.2d 598 (7th Cir.1991), in which the Seventh Circuit reversed a conviction for admission of summary expert testimony which did nothing more than draw inferences from the evidence. However, in Benson, the expert witness summarized the government's testimony and opined as to whether the evidence established the elements of the crime. Delaney, on the other hand, did not address whether the evidence in the case was sufficient to infer a conspiracy or a violation of the substantive counts.
 
 
 22
 Nor was there Bruton error. Delaney's statement about pager numbers does not mention James Chapman, much less inculpate him. Hence, Bruton is inapposite.
 
 VIII
 
 23
 Chapman next claims that the court erred in failing to give a theory of the case instruction, failing to give a multiple conspiracy instruction, and giving an erroneous Pinkerton instruction. The failure to give a theory of the case instruction is reviewed de novo, United States v. Ibarra-Alcarez, 830 F.2d 968, 973 (9th Cir.1987), as is the failure to give a multiple conspiracy instruction. United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989).
 
 
 24
 * A court must instruct the jury on a defendant's theory of the case only if the evidence sufficiently supports the theory and the theory is supported by law. United States v. Aguilar, 883 F.2d 662, 682 (9th Cir.1989), cert. denied, 111 S.Ct. 751 (1991).
 
 
 25
 The district court did not err because there was inadequate support in the evidence for Chapman's theory of the case instruction, that if he supplied a substance other than ephedrine to "trick the trickster," he should be acquitted. At most there was evidence that Chapman had intended only to conspire to manufacture a precursor for a Schedule I controlled substance, methylmethamphetamine. The evidence also showed that Chapman first supplied chemicals after the first unsuccessful cook, and received methamphetamine from two co-conspirators as a result of the second cook. There is thus no factual basis for Chapman's theory of the case instruction.
 
 B
 
 26
 Whether there is a single or multiple conspiracy depends upon the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of time and goals. United States v. Tille, 729 F.2d 615, 621 (9th Cir.), cert. denied, 469 U.S. 845 (1984).
 
 
 27
 The nature of the scheme was to produce methamphetamine. Three attempts were made to do it, two of which were successful. The identity of the participants remained relatively constant for each cook, with evidence that Chapman provided chemicals for and received finished product from the second cook, and in part financed the third cook. Bailey directed the operations for all three cooks, while Renwick-Henshaw watched over the cooking process for all three cooks and Renwick arranged the sale of the methamphetamine. The goal, to produce methamphetamine, was common, and the time frame, from August to October, 1990, was short. Under the Tille factors, there was only one conspiracy, and it was not error to deny a multiple conspiracy instruction.
 
 C
 
 28
 Chapman contends that the district court's failure to instruct that he could only be convicted of "reasonably foreseeable" substantive crimes of co-conspirators requires reversal. We have held, however, that a Pinkerton instruction which omits the "reasonably foreseeable" language is valid. United States v. Vasquez, 858 F.2d 1387, 1393 (9th Cir.1988), cert. denied, 488 U.S. 1034 (1989).
 
 IX
 
 29
 In his pro se supplemental brief, Chapman argues that (1) there was insufficient evidence to convict him, (2) there were multiple conspiracies, and (3) the district court incorrectly addressed a question from a juror. As we have held, there was no basis in the evidence for a finding of multiple conspiracies, and neither of the other points has merit.
 
 
 30
 * There is ample proof to sustain the convictions. Chapman was connected to the conspiracy through telephone calls and the testimony of several witnesses; there was evidence that Chapman complained of the amount of methamphetamine produced by his co-conspirators after the second cook, twice received methamphetamine produced by his co-conspirators, provided supplies for the second cook, and financed part of the third cook. Viewing this evidence in the light most favorable to the government, there is sufficient evidence to support the conviction. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992); cf. United States v. Ocampo, 937 F.2d 485, 489 (9th Cir.1991) (once conspiracy is shown, even a slight connection to the defendant will sustain his conviction).
 
 B
 
 31
 After the jury sent a note to the court requesting clarification of the conspiracy instructions, the judge discussed the conspiracy count with the foreperson but did not give a "buyer-seller" instruction. Because none was requested, we review for "plain error."
 
 
 32
 United States v. Douglas, 818 F.2d 1317 (7th Cir.1987), upon which Chapman relies, is distinguishable. In Douglas, the defendant requested and was denied a buyer seller instruction and it was the defendant's theory of the case that his relationship was a buyer seller relationship. In response to a juror question, the district court responded by merely saying that "The answer is contained in the instructions." By contrast, Chapman never asked for such an instruction and, if the court had given a "buyer-seller" instruction sua sponte, it may have discredited Chapman's theory that he was "tricking the tricksters" by supplying inadequate chemicals. In addition, the court reread the instructions and asked if its explanation sufficed. The foreperson said yes. This case is therefore also unlike United States v. Bolden, 514 F.2d 1301 (D.C.Cir.1975), on which Chapman also relies, because in Bolden, the district court refused to do more than reread the statute despite "cogent requests from the jury and both governments and defense counsel" to address the jurors' questions.
 
 X
 
 33
 Finally, Chapman argues that the district court erred in failing to allow him to inspect the jury list. Both parties agree that it was error for the district court to deny Chapman access to the master jury list, so the question is what remedy, if any, is Chapman entitled to.
 
 
 34
 When a motion to inspect is erroneously denied, reversal is not required. United States v. Washington, 819 F.2d 221, 224 (9th Cir.1987) (if remand for review of records will reliably reveal any prejudice, need for reversal is obviated). Nor do we believe a remand for review is necessary in this case. Chapman's counsel had obtained the master list in connection with another matter at the same time as Chapman's trial, and thus had access to it. Since Chapman had an opportunity to review the list, and no prejudice appears, remand is unnecessary. See United States v. Studley, 783 F.2d 934, 938 (9th Cir.1986).
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3