988 F.2d 123
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Richard S. GERISCH, Defendant-Appellee.
 No. 91-10620.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1992.
Decided March 10, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CR-91-00185-LKK; Lawrence K. Karlton, District Judge, Presiding.
 E.D.Cal.
 AFFIRMED.
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The government appeals an order granting a new trial. Our deferential standard of review for trial court rulings on motions for new trial leads us to affirm.
 
 
 3
 I. Facts.
 
 
 4
 Gerisch was convicted of sexual contact with a minor, in violation of 18 U.S.C. § 2244(a)(3). On an airplane trip, he sat next to a girl who was thirteen, but told him she was sixteen. The statute provides for an affirmative defense, if the defendant "reasonably believed that the other person had attained the age of 16 years." 18 U.S.C. § 2243(c)(1). He gave her vodka from some of the drinks served to him. According to one of the flight attendants, Gerisch embraced and kissed the girl with a hand on her breast in the dimly lit area behind the movie screen, and then was in the bathroom with her, with a "hand up near her chest area," and his other hand "[d]own by his waist level by his shorts." The other flight attendant said they were "in an embrace" in the bathroom, and Gerisch's hands "were on her breast area. They moved down to his pants where I don't know buttoned or zipped or I don't know."
 
 
 5
 The girl testified that she had told Gerisch she was sixteen. At some point she kissed him, but she was drunk and did not recall any of the flight after that until they landed. The girl also testified that the prosecutor had told her, when he interviewed her, that Gerisch had his pants down while they were in the bathroom. She did not recall the incident at all, and the FBI had not told her Gerisch had his pants down.
 
 
 6
 Gerisch, a California peace officer, took the stand. The reference to Gerisch's "shorts" evidently was to short trousers, not undershorts--he testified that he was wearing "white jean cutoffs" with "button fly, five buttons up the front." Gerisch testified that the girl told him she was sixteen and he believed her, he had a number of drinks, he kissed the girl but did not fondle her. Gerisch testified that he helped the girl to the bathroom when she got sick, because she was too drunk to walk, and too drunk to stand up while waiting for the bathroom to be unoccupied. He testified that while she was in the bathroom, she was throwing up, rather than engaging in a mutual embrace with him.
 
 
 7
 Two factual questions were central to the outcome, and to the mistrial. One was whether Gerisch intended to obtain sexual gratification from the girl in the bathroom, or only intended to help her get to it so that she could vomit there. The other was whether he reasonably believed that she was sixteen. The trial judge, who unlike us observed and heard all the witnesses, characterized the case as "very close."
 
 
 8
 The prosecutor began his cross-examination of Gerisch by establishing that he knowingly violated California law by giving alcohol to the girl. This stimulated a relevancy objection because they were not in California, and Gerisch was not charged with furnishing liquor to a minor. They were on a charter flight over the Pacific Ocean, between San Francisco and Honolulu. Gerisch was charged under federal law, not California law. The judge sustained the objection, but the prosecutor then asked Gerisch whether he knew of anyplace in the United States where it was legal. The judge told him to "stop all that," and himself phrased the question as whether Gerisch had an opinion on whether it was lawful to provide alcohol to a sixteen year old on the aircraft. The defense attorney objected, because Gerisch was not charged with that crime, but the judge concluded that the defense had opened the door by asking Gerisch on direct whether he would have done anything to jeopardize his law enforcement career. Gerisch answered that he thought it was illegal and poor judgment but not something over which he would lose his job.
 
 
 9
 A few minutes into the cross, the prosecutor returned to California law, letting the jury know that sexual molestation of a person under 18 would violate California law.
 
 
 10
 Q: And you are a sworn California peace officer, right?
 
 
 11
 A: Yes, I am.
 
 
 12
 Q: All right. Are you also familiar with the section of the California Penal Code 647.6 which makes it an offense to molest a child under 18--
 
 
 13
 Gerisch objected, the objection was sustained, and the judge told the prosecutor he was "skating on the edge." The defendant moved for a mistrial. At sidebar, the prosecutor argued relevance on the basis that Gerisch had said he would not do anything to jeopardize his career, and he was presumably familiar with California law as a peace officer. The judge saw no merit to this argument, took the motion for mistrial under submission and noted his view that an acquittal was likely. The judge told the prosecutor that his question was "way out of line" and "you know it." The judge admonished the jury to disregard the question, and that the question "is intended to prejudice you."
 
 
 14
 During closing argument, Gerisch's attorney reminded the jury that the girl had testified that the prosecutor told her Gerisch's pants were down, but the eyewitnesses had referred only to Gerisch's hand being on his shorts. There was no evidence that Gerisch's pants were down. The flight attendants' testimony was not clear, but seemed to mean that Gerisch's pants were up, but he had a hand near or on them. Gerisch's attorney countered the "vague innuendo that something more was going to go on" by suggesting the impossibility of pulling up jean cutoffs and buttoning a fly with one hand. In rebuttal, the prosecutor argued that the jury could "infer using your common sense what was going to happen next." The defense again moved for a mistrial. The judge took the motion under submission, and admonished the jury that the only charge before them was the one in the indictment, and the suggestion of the possibility of other conduct was irrelevant.
 
 
 15
 The judge granted Gerisch's motion for a new trial, based on two instances of prosecutorial misconduct. They were the question stating California law on sexual contact with persons under 18, and the closing argument suggestion that the jury use its common sense to infer what was going to happen next.
 
 
 16
 II. Standard of Review.
 
 
 17
 We review an order granting a new trial in a criminal case for abuse of discretion. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir.1986). In making the determinations of whether there was prosecutorial misconduct, and "particularly" whether the defendant was prejudiced by the misconduct, "we must ordinarily give great deference to the district judge's handling of the alleged misconduct during the trial." United States v. Tham, 665 F.2d 855, 860 (9th Cir.1981).
 
 
 18
 II. Analysis.
 
 
 19
 To warrant a new trial on the ground of prosecutorial misconduct, a defendant must show that: (1) prosecutorial misconduct occurred, and (2) it was more probable than not that the misconduct materially affected the fairness of the trial. United States v. Aichele, 941 F.2d 761, 765 (9th Cir.1991).
 
 
 20
 The issue of whether misconduct occurred looks close on the cold record, but the trial judge found that it did, and there was enough in the record to sustain that finding under our deferential standard of review. The trial judge was in "a much better position to understand the circumstances surrounding the alleged misconduct." Tham, 665 F.2d at 860.
 
 
 21
 The first instance of misconduct found by the trial court, injection of the California sexual consent age of 18, was arguably relevant to a chain of inferences opened up by Gerisch's direct: (1) Gerisch testified that he would not do anything to jeopardize his career; (2) conduct violative of California law might damage his career even if not a crime where committed; (3) Gerisch admitted to contact with a girl under 18; so (4) he must have been lying when he said he would not do anything to jeopardize his career, and falsus in unum, falsus in omnium. The trial judge evidently did not believe that this was the prosecutor's implication, and thought that the prosecutor was injecting the California age for an improper purpose. The prosecutor's line of questioning also lent itself to this chain of possible implications: (1) Gerisch knew the girl was under 18, so he knowingly committed a California crime; (2) Gerisch is a depraved individual; (3) a man this bad is not entitled to the benefit of a technical distinction between California law and federal law; (4) you should convict him because of his depravity regardless of whether he committed the crime charged. A significant part of the context of the judge's finding that the questions were misconduct may have been the earlier occasion, when the prosecutor led off his cross with questions about California law, and the judge admonished him not to inject California law into the trial. This earlier instance could have justified an inference by the judge that when the prosecutor did it again, his conduct was willful rather than inadvertent. A prosecutor may sometimes try inappropriately to prove that the defendant is a bad person, rather than that he committed the crime charged. The trial judge properly assures a fair trial by focusing the inquiry upon whether the defendant committed the crime of which he is accused.
 
 
 22
 Likewise, the rebuttal argument suggesting that the jury use its common sense about what would have happened next could be misconduct and could be innocent. An innocent meaning might be: (1) his hand was moving toward his shorts; (2) that movement, after touching the girl's breast and kissing her, was most consistent with pulling down his pants; (3) pulling down his pants would be done in order to have sex with the girl; (4) this shows that his touching was sexual, not just to help her to the bathroom because she was too drunk to go herself. Implications amounting to misconduct would be: (1) even if he had not yet engaged in any sexual touching, he was moving his hand to pull his pants down; (2) pulling his pants down could only be for a sexual purpose; (3) if the flight attendants had not interrupted, he would have had sex with the girl; (4) that is so depraved that you should convict him even if he did not commit the crime with which he is charged. Although the cold record allows for the plausibility of the first set of implications, the context also allows for the possibility of the second. An important part of the context here might have been the girl's testimony that the prosecutor had told her Gerisch's pants were down, even though the flight attendants did not support this. The judge might have thought that the prosecutor had followed a course of conduct of suggesting a more plainly sexual situation than the evidence proved.
 
 
 23
 On the question of whether it was more probable than not that the putative misconduct materially affected fairness, the trial court acted well within its discretion. The judge reasonably found that the case was "very close." The jury took a day or more to deliberate after a two and a half day trial, the misconduct was "quite serious" in the judge's view, and the judge was not confident that his curative instruction succeeded. His doubt about the effectiveness of the curative instruction arose in part from several jurors telling him "what a terrible struggle they had," even though he had admonished them not to discuss the matter with him.
 
 
 24
 The district judge had a far better vantage point than we do. United States v. Shaffer, 789 F.2d 682, 689 (9th Cir.1986). He could hear tone of voice, observe pauses and gestures, see facial expressions, and see how the jury reacted to it all. Since he personally observed the entire trial, he was in a much better position than we are "to understand the circumstances surrounding the alleged misconduct and to evaluate its impact." United States v. Tham, 665 F.2d 855, 860 (9th Cir.1981).
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3