73 F.3d 371
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael STIRN, Defendant-Appellant.
 Nos. 94-30288, 95-30016.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Dec. 20, 1995.
 
 1
 Before: REINHARDT and TROTT, Circuit Judges, and TASHIMA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 These are two consolidated appeals by defendant and appellant Michael Stirn ("Stirn") from: (1) a conditional plea of guilty; and (2) the denial, in part, of a motion under 28 U.S.C. Sec. 2255. These appeals raise two issues. Did the district court err in denying Stirn an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978)? Did the district court err in denying Stirn a hearing on whether his counsel provided effective assistance of counsel? The answer to both questions is no. We have jurisdiction of these timely appeals under 28 U.S.C. Sec. 1291, and we affirm the judgment and order below.
 
 FACTS
 
 4
 On October 15, 1990, Detective Jack Neumiller ("Neumiller") of the Spokane Police Department submitted an affidavit for a warrant to search for controlled substances at 1127 E. Empire, a residence in Spokane, Washington ("Empire house"). In relevant part, the affidavit ("Empire affidavit") stated: 1) the house appeared to be unoccupied; 2) only one man frequented the house; 3) he came to the house three to four times a week for approximately 30 minutes; 4) police had observed him leaving the house in a suspicious manner; 5) this man drove a White Chevrolet Blazer registered to Michael Stirn; 6) the house smelled faintly of marijuana; and 7) power records indicated that the average electricity use for the house was 3080 kw per month, compared to the house next door of the same approximate size that used an average of 900 kw per month. Based on this information, a magistrate issued a warrant. The police discovered approximately 180 marijuana plants during the search.
 
 
 5
 As a result of the Empire house search, Neumiller swore out an affidavit ("Gordon affidavit") for a warrant to search the house at 1638 East Gordon in Spokane ("Gordon house"). The Gordon affidavit stated the same facts as the Empire affidavit. It also stated: 1) 180 marijuana plants had been found at the Empire house; 2) a White Blazer drove by the Empire house while it was being searched; 3) basement windows on the west side of the Gordon house were boarded up and covered with plastic; and 4) power usage at the Gordon house was two and one-half times greater than that of a neighbor. Based on this information, a magistrate issued a search warrant. Police discovered approximately 130 marijuana plants during the search.
 
 PROCEEDINGS BELOW
 
 6
 As a result of the evidence found during the searches, Stirn was indicated on two counts of manufacturing over one hundred marijuana plants, in violation of 21 U.S.C. Sec. 841(a)(1), and one count of manufacturing marijuana within one thousand feet of a school, in violation of 21 U.S.C. Sec. 845a. Stirn pled not guilty to these charges.
 
 
 7
 Stirn's then-attorney, Patrick K. Stiley ("Stiley"), filed a motion for a Franks hearing, claiming that Neumiller had made intentionally or recklessly false statements in the Empire and Gordon affidavits. With the motion, Stiley filed his own affidavit ("Stiley affidavit"), alleging that the blackened windows described at the Gordon house did not exist and that the statement that only one person frequented the Empire house was contradicted by police reports and by witnesses.[1]
 
 
 8
 At oral argument on the motion, Stiley attempted to supplement his affidavit with oral representations. Specifically, he argued that the police knew that Stirn was not the only visitor to the Empire house. He also claimed that Nuemiller unfairly compared the power usage at the Gordon house to another nearby house. According to Stiley, the Gordon house was two and one-half times larger than any neighboring house, was powered by electric heat, and had a jacuzzi.[2] Stiley did not have affidavits or other sworn testimony from the witnesses he referred to in his oral statements. He did, however, indicate that the witnesses could testify at a Franks hearing.
 
 
 9
 The district court denied Stirn's motion for a Franks hearing. Following this ruling, Stirn entered into a plea agreement with the government. Stirn agreed to plead guilty to two counts of manufacturing marijuana, but reserved the right to appeal the denial of his motion for a Franks hearing. See Fed.R.Crim.P. 11(a)(2).
 
 
 10
 Before sentencing, the government agreed to participate in a "free talk" with Stirn. Stirn was to provide evidence about other grow houses in exchange for the government's consideration of filing a motion for reduction of sentence under Fed.R.Crim.P. 35. Stiley did not attend the free talk because the information requested by the government potentially involved information about some of Stiley's other clients.
 
 
 11
 Stirn turned over the address of a grow house maintained by Terry Cunningham, a former client of Stiley. Allegedly, Stirn received the address from Stiley in an envelope. Stiley claims this envelope was delivered to his office anonymously. Both Stiley and Stirn have speculated that the envelope came from Cunningham. Shortly after the free talk session, Stirn was sentenced to the statutory, mandatory, minimum sentence of five years' imprisonment and four years of supervised release.
 
 
 12
 The government declined to file a Rule 35 motion because Stirn had tested positive for cocaine use while on release pending sentencing, Stirn had no personal knowledge of the information he provided to the government, and the government already knew of this grow house.
 
 
 13
 Stirn's first attempted appeal was dismissed as untimely. United States v. Stirn, No. 92-30025 (9th Cir. March 16, 1992). His motion for an extension of time to file a notice of appeal pursuant to Fed.R.App.P. 4(b) was also denied, as was a subsequent motion for reconsideration. We affirmed. United States v. Stirn, No. 92-30025 (9th Cir. Dec. 11, 1992).
 
 
 14
 Stirn then filed a motion for relief under 28 U.S.C. Sec. 2255. Stirn alleged that he was denied effective assistance of counsel in that Stiley: 1) failed to appeal the denial of the suppression motion in a timely manner; 2) had a conflict of interest that prevented Stirn from providing substantial assistance to the government; and 3) failed to provide sufficient affidavits to obtain a Franks hearing on the motion to suppress. The district court found that the failure timely to appeal constituted ineffective assistance of counsel. It granted Stirn's Sec. 2255 motion only to the extent of ordering the Clerk to re-enter the judgment of conviction so that a timely notice of appeal from denial of the suppression motion could be filed. However, the district court denied relief on the remaining issues.
 
 
 15
 In the district court, the issue of Stirn's standing to challenge the Empire house search was not raised. However, Stirn has never claimed to have a proprietary interest in the Empire house.
 
 STANDARD OF REVIEW
 
 16
 We review de novo the denial of a Franks hearing. United States v. Perdomo, 800 F.2d 916, 920 (9th Cir.1986). We review a denial to hold an evidentiary hearing on a Sec. 2255 motion for abuse of discretion. Doganiere v. United States, 914 F.2d 165, 168 (9th Cir.1990). We review a denial of a Sec. 2255 motion de novo. Frazer v. United States, 18 F.3d 778, 781 (9th Cir.1994). We review a claim for ineffective assistance of counsel de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991).
 
 DISCUSSION
 
 17
 I. Franks Hearing.
 
 
 18
 An affidavit supporting a search warrant is presumptively valid. Franks, 438 U.S. at 171. However, a search warrant can be set aside when a defendant shows: 1) the affidavit contains intentionally or recklessly made false statements; and 2) purged of its falsities, the affidavit would not support probable cause. United States v. Stanert, 762 F.2d 775, 781 (9th Cir.1985).
 
 
 19
 Franks provides for an evidentiary hearing to determine whether the warrant should be set aside. 438 U.S. at 171. There is no need for an evidentiary hearing, however, unless the defendant makes a "substantial preliminary showing" that the affiant intentionally or recklessly misled the magistrate. Stanert, 762 F.2d at 781. Additionally, there is no need for a hearing if, after the "material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." Franks, 438 U.S. at 171-72.
 
 
 20
 Stirn contends that he made a substantial preliminary showing that he was entitled to a Franks hearing. We conclude that he did not.
 
 A. Standing
 
 21
 As a preliminary matter, Stirn did not have a reasonable expectation of privacy in the Empire house. To challenge the legality of a search on Fourth Amendment grounds, a defendant must have a "legitimate expectation of privacy" in the area searched. See United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir.1995) (citing Rakas v. Illinois, 439 U.S. 128, 148 (1978)). At oral argument, counsel conceded that Stirn did not have a connection to the Empire house that would give him a reasonable expectation of privacy in that house. Thus, Stirn is precluded from challenging the legality of the search of the Empire house.[3]
 
 
 22
 This fact renders the rest of the Franks analysis moot. The Empire house was searched first. Neumiller did not swear out the Gordon affidavit until after marijuana was found at the Empire house. Based on the Gordon affidavit's statements that drugs were found at the Empire house and of Stirn's connection to the Empire house, the Gordon affidavit contained enough information to show probable cause. Stirn does not contest the truthfulness of these statements. Accordingly, putting aside all other information in the Gordon affidavit, a magistrate still could have found probable cause to issue the warrant; thus, a Franks hearing was unnecessary.
 
 
 23
 Stirn argues that even though he does not have standing to challenge the Empire house search, the court should consider whether the affiant lied to secure the Empire house warrant because, if so, we should consider that fact in determining whether the affiant was likely to lie to secure the Gordon house warrant. Even if we were to accept this argument, Stirn did not make a substantial preliminary showing that the affiant intentionally or recklessly misled the magistrate in order to secure either of the search warrants. Stanert, 762 F.2d at 781.
 
 B. Oral Representations
 
 24
 Stirn presented two forms of "evidence" to justify a Franks hearing: an affidavit by Stiley with an accompanying memorandum of points and authorities; and Stiley's oral representations. We first consider whether the oral representations, buttressing the general allegations made in the affidavit, can be considered by the court as substantive evidence that Stirn was entitled to a Franks hearing.
 
 
 25
 The Supreme Court has stated that allegations of deliberate or reckless disregard for the truth must be "accompanied by an offer of proof." Franks, 438 U.S. at 171. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained." Id. Stiley did not provide affidavits from witnesses or otherwise reliable statements from them: he simply presented his own affidavit and made unsubstantiated oral representations as to what various witnesses would testify to during a Franks hearing.
 
 
 26
 As Stiley did not provide any statements from witnesses, the inquiry becomes whether the absence of reliable statements was "satisfactorily explained." Stiley indicated that his offer of proof was not more formal because he simply lacked the time to put together the necessary documentation.[4]
 
 
 27
 Attorney backlog and confusion of hearing schedules does not ordinarily "satisfactorily explain" the lack of formal documentation. Excusable neglect "is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case." Selph v. Council of the City of Los Angeles, 593 F.2d 881, 884 (9th Cir.1979) (citation omitted).
 
 
 28
 Because the oral representations were not independently reliable and there was not a satisfactory explanation for the absence of reliable documentation, Stiley's statements fell short of the "offer of proof" requirement of Franks. Therefore, Stiley's oral representations must be disregarded in determining whether a Franks hearing was required.
 
 C. Affidavit
 
 29
 Stirn contends that three false allegations justified a Franks hearing. First, he alleges that the police knew he was not the only individual who frequented the Empire house. Secondly, Stirn alleges that the power usage records included in the Gordon affidavit were false. Finally, he alleges that the windows at the Gordon house were not blackened in the manner alleged in the Gordon affidavit. These arguments do not justify a Franks hearing.
 
 
 30
 According to the Stiley affidavit, the police deliberately misled the magistrate into believing that Stirn was the sole visitor to the Empire house for the eighteen months prior to the search. The so-called sole visitor theory did not affect a finding of probable cause. Stirn had a significant connection to the Empire house, and was observed by police leaving in a suspicious manner. Stirn does not contest the truthfulness of either of these allegations. Accordingly, there was an indication in the affidavits that something unlawful was occurring at the Empire house, and that Stirn was involved in the activity. A magistrate could have found probable cause to issue the warrants even without the indication that Stirn was the sole visitor to the house.
 
 
 31
 Stirn next argues that the power usage statistics were intentionally misleading. The Stiley affidavit does not raise any objection to the power usage statistics, except for contending that the information was obtained in violation of Washington state law.[5] Thus, there is no basis to consider this as substantive evidence to support a Franks hearing.
 
 
 32
 The Stiley affidavit alleges that the blackened windows alleged in the Gordon affidavit do not exist. Apparently, there are no blackened basement windows on the "west side" of the Gordon house, as alleged in the Gordon affidavit. However, Stirn acknowledges there were other windows "blackened" at the house, although not as alleged by the affiant. Describing the blackened windows in the wrong area of the house is more akin to an unintentional error, rather than an intentional or reckless misstatement. The fact that there were other blackened windows at the Gordon house negates any suggestion that the affiant was intentionally or recklessly misleading the magistrate. The precise location of the blackened windows did not materially bear on the existence of probable cause. Accordingly, this argument does not justify a Franks hearing.
 
 D. Summary
 
 33
 None of the arguments advanced by Stirn, either individually or collectively, justified a Franks hearing. Stirn failed to make a substantial preliminary showing that the warrants contained intentionally or recklessly made misstatements of fact. Accordingly, the district court did not err in its denial of a Franks hearing.
 
 
 34
 II. Ineffective Assistance of Counsel Claims.
 
 
 35
 Stirn also appeals the denial of an evidentiary hearing on his Sec. 2255 claim of ineffective assistance of counsel. Under Sec. 2255, "if the movant's allegations ... do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal," then no hearing is required. United States v. Burrows, 872 F.2d 915, 917 (9th Cir.1989).
 
 A. Conflict of Interest
 
 36
 Stirn claims that Stiley's involvement in the free talk was a conflict of interest. To establish a Sixth Amendment violation based on conflict of interest, a defendant must show: 1) counsel actively represented conflicting interests; and 2) the conflict adversely affected the attorney's conduct. Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir.1988) (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). However, if the defendant shows that there was an actual conflict of interest that resulted in an adverse effect on the attorney's conduct, prejudice is presumed. Strickland v. Washington, 466 U.S. 668, 692 (1984) (citation omitted).
 
 
 37
 Stirn makes several factual allegations to show a conflict of interest. To determine whether Stirn could have prevailed on his claim, these allegations must be accepted as true. United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994).
 
 
 38
 Stirn alleges that Stiley had represented Cunningham prior to his representation of Stirn. Cunningham was Stirn's supplier of marijuana. The information turned over by Stirn to the government contained the address of a grow house maintained by Cunningham. Stiley knew that this "anonymous" information came from Cunningham. Stirn contends that by giving him the information, Stiley "set him up" to negotiate with the government based on secondhand information that he could not verify. This "set up" led to the government's distrust of Stirn, which resulted in a refusal to file a Rule 35 motion for substantial assistance.
 
 
 39
 While the facts reveal that Stiley may have exercised poor judgment, they do not reveal that he was actively representing conflicting interests at the time. Stirn acknowledges that Cunningham was a former client of Stiley. Stirn does not claim that Stiley was motivated by a desire to protect any former clients. Indeed, Stiley's act of passing the address of Cunningham's grow house to Stirn reveals his utmost loyalty to Stirn to the possible detriment of Cunningham. Thus, it was not a breach of trust to allow Stirn to pass secondhand information to the government. Because Stirn did not allege or show that Stiley was representing an adverse interest during his representation of Stirn, the district court correctly concluded that there was no conflict of interest.
 
 B. Competence of Counsel
 
 40
 Stirn's final contention is that Stiley's failure to submit his oral representations in affidavit form violated his Sixth Amendment right to effective assistance of counsel. To establish a Sixth Amendment violation based on competence of counsel, a defendant must show: 1) counsel was ineffective; and 2) the ineffective assistance prejudiced the defense. Strickland, 466 U.S. at 687.
 
 
 41
 Stirn contends that comparison of the power records between the Gordon house and its neighboring house should have been presented in affidavit form to show that the excessive power usage claim, was misleading. As explained above, however, the power records were not necessary to a finding of probable cause to search the Gordon house, in light of the results of the Empire house search. Thus, even accepting that this information should have been redacted from the Gordon affidavit, a magistrate still had probable cause to issue the search warrant. Accordingly, Stirn was not prejudiced by Stiley's failure to provide the oral representations in affidavit form; therefore, he cannot prevail on a claim for ineffective assistance of counsel.
 
 C. Summary
 
 42
 Accepting Stirn's factual allegations as true, his Sec. 2255 motion did not state a claim for ineffective assistance of counsel based on either conflict of interest or incompetent representation.[6]
 
 
 43
 The judgment of conviction and the denial in part of Stirn's Sec. 2255 motion are AFFIRMED.
 
 
 
 *
 Hon. A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Other allegations were made that have not been pursued on appeal
 
 
 [2]
 Other oral allegations were made at the hearing which have not been pursued on appeal
 
 
 [3]
 The issue of standing was raised for the first time on appeal. As we explained in United States v. Nadler, 698 F.2d 995, 998 (9th Cir.1983), "[t]he fact that the Government did not specifically raise the expectation of privacy issue during the course of the hearings on the motions to suppress is of no consequence." So long as the government does not assent to contrary findings of fact regarding a defendant's expectation of privacy, the government has not abandoned the issue and may raise it on appeal. United States v. Taketa, 923 F.2d 665, 670 (9th Cir.1991)
 
 
 [4]
 Apparently, there was confusion about which day the motion hearing was to be held, and Stiley believed he had several more days to prepare for the hearing
 
 
 [5]
 The district court held that a violation of state law did not bear upon an analysis of whether a Franks hearing was necessary. The district court noted that so long as the obtaining of the warrant complied with federal law, the evidence would be admissible in a federal trial. See United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir.1987) (evidence seized by state officials without federal involvement in alleged violation of state law was admissible in federal court, where it was seized in compliance with federal law). Stirn has not pursued this argument on appeal
 
 
 [6]
 Except for failure to file a timely notice of appeal